966 So.2d 66 (2007)
Oneita SMITH, as Curator of the Estate of Evelyn B. LeBlanc
v.
Darryl LEBLANC and Eva LeBlanc Miller.
No. 2006 CA 0041.
Court of Appeal of Louisiana, First Circuit.
August 15, 2007.
*68 Mark D. Plaisance, Baker, for Plaintiff-Appellant Oneita L. Smith.
Terry T. Dunlevy, Brent J. Bourgeois, Randy T. Cresap, Roedel, Parsons, Koch, Blache, Balhoff & McCollister, Baton Rouge, for Defendants-Appellees Darryl LeBlanc and Eva L. Miller.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
PARRO, J.
In this action for damages for breach of a fiduciary duty, the plaintiff appeals from a judgment sustaining the defendants' peremptory exception raising the objection of res judicata based on a judgment of homologation entered in an interdiction proceeding. For the following reasons, we affirm.

Factual Background and Procedural History
On August 11, 2004, Oneita LeBlanc Smith (Oneita), as curatrix of the estate of her mother, Evelyn B. LeBlanc, filed a petition for breach of fiduciary duty and damages against her siblings, Darryl LeBlanc (Darryl) and Eva LeBlanc Miller (Eva), who had served as curator and undercuratrix, *69 respectively, over the finances of their mother's estate following her interdiction by a judgment dated April 16, 2002.[1] During this time, Oneita served as temporary curatrix of the person of Evelyn LeBlanc. Following the court's granting of Darryl's motion to resign on July 18, 2003, Oneita was appointed curatrix of her mother, and David Smith, grandson of Evelyn LeBlanc, was appointed provisional undercurator.
In her petition for breach of a fiduciary duty and damages, Oneita alleged that Darryl and Eva had paid approximately $35,000 in legal fees from their mother's estate in connection with the interdiction proceeding, which was arbitrary, contrary to the best interest of the estate, and without court authority. She contended that in making these payments, Darryl and Eva breached their fiduciary duties to protect and safeguard the estate's finances. Oneita further alleged that through their misrepresentation and misconduct, Darryl and Eva unlawfully distributed the funds of the estate and failed to provide an accounting, despite repeated requests to do so.
In their answer, Darryl and Eva averred that any and all disbursements made by them were properly reported in the interdiction proceeding in both an annual accounting and the final accounting, which was approved in a judgment of homologation dated August 18, 2003. They urged that since the judgment of homologation was now a final judgment, Oneita's instant claims regarding the payment of attorney fees are barred by the doctrine of res judicata. They also took issue with the timeliness of Oneita's filing of the instant action. Subsequently, Darryl and Eva filed a peremptory exception, setting forth the objection of res judicata based on the judgment of homologation. Furthermore, Darryl and Eva noted that Oneita had challenged these legal expenditures in the interdiction proceeding, but failed to pursue her claim or to file an objection or traversal to the final accounting prior to the signing of the judgment of homologation.
Their exception was opposed by Oneita on the following grounds: (1) the judgment of homologation was an absolute nullity due to the lack of proper service and/or notice to Oneita, which precluded her from being able to object to the final accounting or file a motion to traverse with respect to the petition for homologation; (2) Oneita had been unable to obtain information from financial institutions until her appointment as curatrix in July 2003, which led to the discovery of expenditures to support her claim of fraudulent and inaccurate accounting; and (3) Oneita had not appeared in the interdiction proceeding in the capacity of curatrix. Additionally, *70 Oneita filed a motion for leave of court to file an amended petition to assert a claim for annulment of the judgment of homologation.
Following a hearing on the objection of res judicata, the trial court in oral reasons found that a suit to challenge service must be brought in a separate action for nullity of a judgment, rather than being attacked collaterally in an action for breach of fiduciary duty. Accordingly, Oneita's motion for leave of court to file a proposed amended petition to assert a claim for nullity was denied. Additionally, the trial court found that the instant action was precluded by the doctrine of res judicata based on the fact that Oneita could have raised, and had in fact raised, the issue of Darryl and Eva's actions in the interdiction proceeding during the course of the curatorship; however, Oneita abandoned or did not fully pursue that issue in the interdiction proceeding. Thus, Darryl and Eva's exception was sustained, and Oneita's instant action was dismissed with prejudice. Oneita filed a motion for new trial relative to the ruling on the exception. Following the denial of that motion, Oneita appealed.

Applicable Law on Res Judicata
The doctrine of res judicata is defined by LSA-R.S. 13:4231, which provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
Thus, to dismiss Oneita's action for damages for breach of a fiduciary duty on the basis of res judicata, the court must find: (1) the judgment in the interdiction proceeding is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the suit for damages existed at the time of final judgment in the interdiction proceeding; and (5) the cause or causes of action asserted in the suit for damages arose out of the transaction or occurrence that was the subject matter of the interdiction proceeding. See Burguieres v. Pollingue, 02-1385 (La.2/25/03), 843 So.2d 1049, 1053.
The party raising the objection of res judicata bears the burden of proving the essential facts to support the objection. Diamond B Const. Co., Inc. v. Dept. of Transp. and Development, 02-0573 (La. App. 1st Cir.2/14/03), 845 So.2d 429, 435. The doctrine of res judicata is not discretionary and mandates that valid and final judgments be given effect. Id. The doctrine, however, cannot be invoked unless all its essential elements are present. It is strictly construed, and any doubt concerning its applicability is to be resolved against the party raising the objection. Mandalay Oil & Gas, L.L.C. v. Energy Development Corp., 01-0993 (La.App. 1st Cir.7/03/02), 867 So.2d 709, 713.

*71 Valid and Final Judgment

In pertinent part, the August 18, 2003 judgment, which is at the heart of Darryl and Eva's objection of res judicata, provides:
Considering the foregoing Certificate of No Opposition, and
Due proof having been made before this Court that the Final Accounting of Darryl LeBlanc, Curator herein was served on Oneita LeBlanc Smith and on Eva LeBlanc Miller; that the legal delays for filing opposition made hereto have elapsed and that No Opposition has been filed.
IT IS ORDERED, ADJUDGED AND DECREED that the Final Accounting of Darryl LeBlanc is hereby approved and homologated.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Darryl LeBlanc be and he is hereby discharged as Curator and his bond shall be canceled by the Clerk of Court.
Initially, Oneita contended that this judgment does not support the sustaining of an objection of res judicata, because it is not a valid and final judgment based on the fact that it is an absolute nullity. In particular, she complained that she never received notice of Darryl's intent to file a final accounting. Therefore, she sought to amend her petition in this case to collaterally attack the validity of the August 18, 2003 judgment.[2] The propriety of this action was questioned by Darryl and Eva.
The nullity of a final judgment may be demanded for vices of either form or substance, as provided in LSA-C.C.P. arts. 2002 through 2006. LSA-C.C.P. art. 2001. A final judgment shall be annulled if it is rendered:
(1) Against an incompetent person not represented as required by law.
(2) Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken.
(3) By a court which does not have jurisdiction over the subject matter of the suit.
LSA-C.C.P. art. 2002(A). An action of nullity on these grounds may be asserted collaterally and at any time. LSA-C.C.P. art. 2002, Official Revision Comments  1960, comment (e). Furthermore, a final judgment obtained by fraud or ill practices may be annulled. LSA-C.C.P. art. 2004(A). An action to annul a judgment on these grounds must be brought within one year of the discovery of the fraud or ill practices by the plaintiff in the nullity action. LSA-C.C.P. art. 2004(B).
A judgment is an absolute nullity when there exists a vice of form. See LSA-C.C.P. art. 2002, Official Revision Comments  1960, comment (f). A person with interest may show such a nullity in collateral proceedings at any time and before any court, for absolutely null judgments are not subject to the venue and delay requirements of LSA-C.C.P. art. 2004. See Nethken v. Nethken, 307 So.2d 563, 565 (La.1975); Roach v. Pearl, 95-1573 (La.App. 1st Cir.5/10/96), 673 So.2d 691, 694; Knight v. Sears, Roebuck & Co., 566 So.2d 135, 137 (La.App. 1st Cir.), writ denied, 571 So.2d 628 (La.1990).
A final judgment obtained by fraud or ill practices is not an absolute nullity; the nullity must be properly decreed within the time prescribed. Knight, *72 566 So.2d at 137; see LSA-C.C.P. art. 2004(B). No specific provision was made in Article 2004 regarding the manner of asserting the grounds of nullity. This was thought unnecessary in view of the established jurisprudence to the effect that such grounds must be asserted in a direct action and cannot be raised collaterally. LSA-C.C.P. art. 2004, Official Revision Comments  1960, comment (d); see Knight, 566 So.2d at 137, citing Nethken, 307 So.2d at 565, and Pontchartrain Park Homes, Inc. v. Sewerage and Water Bd. of New Orleans, 246 La. 893, 168 So.2d 595, 597 (1964). Thus, the party praying for the nullity of a relatively null judgment must bring his action by means of a petition, and the adverse party must be cited to appear, as in ordinary suits. Knight, 566 So.2d at 137; see LSA-C.C.P. art. 1201; Ledford v. Pipes, 507 So.2d 9, 11 n. 1 (La.App. 2nd Cir.1987). A direct action can be brought by filing a separate proceeding or by the filing of a pleading in the same proceeding as that in which the offending judgment was rendered. Roach, 673 So.2d at 694; Knight, 566 So.2d at 137. The limitation envisioned by comment (d) to LSA-C.C.P. art. 2004 prohibits the issue from being raised by way of an affirmative defense, such as in the answer or by exception. Clearly, any of those methods would be a collateral attack, that is, an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling the judgment.[3]Knight, 566 So.2d at 137; see Roach, 673 So.2d at 693-94; Succession of Schulz, 622 So.2d 693, 696 n. 3 (La.App. 4th Cir.1993), writ denied, 93-2605 (La.1/13/94), 631 So.2d 1161. The reason for this rule is that a relative nullity involves a factual issue which must be proven by evidence placed in the record. Ledford, 507 So.2d at 11.
Furthermore, summary proceedings are provided for in LSA-C.C.P. arts. 2591 through 2596. A summary proceeding is one which is conducted with rapidity, within the delays allowed by the court, and without citation and the observance of all formalities required in ordinary proceedings. LSA-C.C.P. art. 2591, Summary proceedings may be used only in those matters in which the law permits them to be used.[4]See LSA-C.C.P. art. 2592. An action for nullity of a final judgment, alleging fraud or ill practices pursuant to LSA-C.C.P. art. 2004, must be brought in an ordinary proceeding; there is no authority in law to bring such an action in a summary proceeding. See Johnson v. Vinson Guard Service, Inc., 577 So.2d 56, 59 (La. App. 1st Cir.1990), writ denied, 578 So.2d 915 (La.1991).
The instant suit clearly is not one brought by Oneita for the express purpose of annulling the August 18, 2003 judgment of homologation. Thus, the appropriateness of the collateral attack by her on the validity of that judgment depends on whether the August 18, 2003 judgment is an absolute nullity based on a vice of form set forth in LSA-C.C.P. art. 2002 or whether it is a relative nullity because it was obtained by fraud or ill practices.[5]
*73 With respect to Darryl's duties as a curator, we note the following. The curator shall expend that portion of the revenue from the property of the interdict as is necessary to care properly for his person or affairs. If the revenue is insufficient for these purposes, the curator may expend the capital of the interdict, with court authorization, in the manner provided by LSA-C.C.P. art. 4271. LSA-C.C.P. art. 4567. Relative to the curator's post-judgment monitoring and reporting, LSA-C.C.P. art. 4569 provides:
A. A curator with responsibility for affairs of the interdict shall file an account annually, upon the termination of his office, and at any other time ordered by the court. A curator with responsibility for the person of an interdict shall file a personal report describing the location and condition of the interdict annually, upon the termination of his responsibilities, and at any other time ordered by the court. At the time of filing, the curator shall send copies of any required account or personal report by first class United States mail postage prepaid to the undercurator and any successor curator. The provisions of Articles 4393 and 4398 shall apply to accounts by curators.
B. The court may appoint an examiner at any time to review an account or personal report of the curator, to interview the interdict, curator, or undercurator, or to make any other investigation. At any time, the court may appoint an attorney to represent the interdict.
Article 4393 addresses the contents of an account by a tutor,[6] and Article 4398 pertains to the cost of the accounting. No further reference is made in Article 4569 to any other procedural articles pertaining to an accounting by a tutor. In fact, by 2000 La. Acts, 1st Ex.Sess., No. 25, § 3, effective July 1, 2001, the legislature amended the law on interdiction and the curatorship of interdicts to eliminate the requirement that all accounts be served and homologated in accordance with LSA-C.C.P. arts. 4394 through 4396 pertaining to tutors.[7] LSA-C.C.P. art. 4569, Revision *74 Comments-2000, comment (a).[8]
With the elimination of the requirement that all accounts be served and homologated in accordance with LSA-C.C.P. arts. 4394 through 4396 pertaining to tutors, the curator is simply required to send a copy of a final account filed on the termination of his office[9] to the undercurator and any successor curator by first class United States mail postage prepaid. Furthermore, the law no longer expressly provides for a designated period of time for the filing of an opposition to the final account.
The trial court, in a judgment dated July 18, 2003, granted Darryl's motion to resign his position as curator[10] and Eva's motion to resign her position as undercuratrix.[11] Additionally, Oneita was appointed as the sole successor curatrix of Evelyn LeBlanc, and the judgment authorized the payment of $4,281.75 in legal expenses to Darryl's attorney. The July 18, 2003 judgment was approved by counsel for Darryl and Eva, as well as by Joe Stevenson, as counsel for Oneita, "individually, etc."
Clearly, under LSA-C.C.P. art. 4569(A), Oneita, the successor curatrix, was entitled to receive a copy by first class United States mail postage prepaid of the final account filed by Darryl, who had been allowed to resign his position of curator over the finances by the judgment dated July 18, 2003. Oneita contends on appeal that because she never received service of the petition for homologation, the August 18, 2003 judgment of homologation should be nullified pursuant to LSA-C.C.P. art. 2002(A)(2).
The appellate record contains a petition for homologation of the final account prepared *75 by legal counsel for Darryl, which was filed on July 30, 2003. This pleading indicates it was sent to Oneita[12] through her attorney of record, Mr. Stevenson, as authorized by LSA-C.C.P. art. 1313, by the United States mail, certified, with return receipt requested, as required by LSA-C.C.P. art. 4569(A). The record reflects that Darryl's counsel filed a copy of the return receipt card, evidencing receipt on July 31, 2003, that had been attached to the mailing that had been forwarded to Mr. Stevenson. Moreover, the preamble to the August 18, 2003 judgment states that due proof was made before the court that the final account was served on Oneita and Eva and that no opposition had been filed.
In her appellate brief, Oneita conceded that notice of Darryl's petition for homologation of the final account was sent to Mr. Stevenson by certified mail on July 30, 2003. However, Oneita urged that service on Mr. Stevenson was ineffective as to her in light of his filing a motion to withdraw as her counsel of record in the interdiction proceeding on July 25, 2003,[13] which motion was allegedly granted by an order of the trial court dated August 6, 2003.[14] Based on this alleged ineffective service, Oneita submitted that the August 18, 2003 judgment was an absolute nullity, capable of being attacked collaterally in the instant proceeding.
Since Mr. Stevenson's motion to withdraw was not signed and approved by the court until after the petition for homologation was filed and served on him, he was still technically Oneita's attorney of record when service was made on her through him. Upon termination of representation,[15] a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fees or expenses that have not been earned or incurred. Rules of Prof. Conduct, Rule 1.16(d). In withdrawing from the attorney-client relationship, an attorney unquestionably owes a duty to the client that he has represented not to waive any substantial right or do any other act, by assuming authority under his prior representation, which would be contrary to the interests of his former client. Sterling v. Jones, 255 La. 842, 233 So.2d 537, 539 (1970). Therefore, until such time as his motion to withdraw as counsel was acted on by the trial court, Mr. Stevenson had a duty to his client, Oneita, to notify her about the petition filed by Darryl. See Pyle v. Pyle, 00-55 (La.App. 3rd Cir.6/28/00), 769 So.2d 626, 628. Thus, service on Mr. Stevenson was proper as a matter of law.
The grounds of nullity enumerated in LSA-C.C.P. art. 2002 are exclusive as to vices of form. Hebert v. Hebert, 96-2155 (La.App. 1st Cir.9/19/97), 700 So.2d 958, 959. The alleged failure by her counsel of record to send notice to Oneita that the petition had been filed does not come within the purview of any of the grounds for *76 nullity contained in Article 2002. See Pyle, 769 So.2d at 627-28.
Adequate notice is one of the most elementary requirements of procedural due process; it is fundamental to our system of laws that there be notice prior to trial, except in extraordinary cases, such as executory process. Davis v. Dunn & Bush Const., 01-2472 (La.App. 1st Cir.8/20/03), 859 So.2d 155, 158. In the absence of notice from Mr. Stevenson or otherwise of the filing of the petition of homologation, Oneita would have suffered a violation of her right to procedural due process. Consequently, the judgment of homologation would seemingly be improper as one obtained by fraud or ill practices, which would be subject to being annulled pursuant to LSA-C.C.P. art. 2004. See Davis, 859 So.2d at 158.
Since a final judgment obtained by fraud or ill practices is not an absolute nullity, Oneita's attack on the validity of the August 18, 2003 judgment cannot be raised collaterally in her action for breach of fiduciary duty and damages. Therefore, we conclude that the trial court was legally correct in denying Oneita's request for leave of court to file an amended petition in these proceedings to assert a claim for nullification of the August 18, 2003 judgment. See Nethken, 307 So.2d at 565.
In light of the evidence of service of the petition on Mr. Stevenson, there is no vice of form or apparent defect in the interdiction proceeding that would cast doubt on the validity of the August 18, 2003 judgment and the presumption of its correctness. Furthermore, Oneita offered no evidence in opposing the objection of res judicata to otherwise establish the existence of a ground for nullity under LSA-C.C.P. art. 2002. The fact that Mr. Stevenson had previously filed a motion to withdraw as counsel of record, alone, does not clearly and convincingly[16] establish that service on counsel of record was not effected under circumstances from which it can at least be reasonably presumed that notice resulting from such service would be communicated to the litigant so as to render service pursuant to Article 1313 fatally defective. Cf. Rawley v. Rawley, 357 So.2d 286, 289 (La.App. 1st Cir.), writ denied, 357 So.2d 1154 (La.1978), cert. denied, 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978). Based on the record before us, we are unable to find that the trial court erred, manifestly or legally, in apparently concluding that Darryl and Eva met their burden of proving the presumed validity of the August 18, 2003 judgment.

Existence of Cause of Action
In order to be barred by the doctrine of res judicata in this case, the cause or causes of action asserted in the suit for breach of a fiduciary duty and damages must have existed at the time of the August 18, 2003 judgment in the interdiction proceeding. Oneita claimed that the cause of action for breach of fiduciary duty did not exist at the time of the prior judgment, as it did not arise until after the interdiction proceeding was complete and final. According to Oneita, her filing of the motion for a detailed accounting in the interdiction proceeding did not prove the existence of a viable claim for breach of a fiduciary duty. In her appellate brief, Oneita urged that this motion simply sought to have herself reimbursed for the expenses paid by her on behalf of her mother, to have her mother's trailer sold because it was unoccupied and uninsured, and to have Darryl and Eva provide an accounting.
*77 Relative to the motion referred to by Oneita, we note the following. On November 6, 2002, Oneita, in her capacity as the curatrix of the person of Evelyn LeBlanc, filed a motion in the interdiction proceeding for the payment of expenses, removal/sale of the trailer, and an accounting. In her motion, Oneita, in pertinent part, alleged that:
she had not been provided with a full accounting of the source and use of her mother's assets;
Darryl had used her mother's funds to pay his own attorney fees in matters not related to the interdiction proceeding in amounts which exceeded the costs of the interdiction; and
no application had been made by Darryl for the payment of any legal fees in this matter and no judgment was rendered ordering payment of legal expenses.
Based on these allegations, Oneita requested that the court order a full and detailed accounting and permit her to traverse such an accounting. She also sought to have the court determine if the funds used for legal fees and expenses were appropriate for the interdiction proceeding.
In his answer to applicable allegations of Oneita's petition, Darryl averred that (1) Oneita was not entitled to any more accounting than that which was presently being voluntarily furnished to her, (2) he had furnished and continued to furnish itemized "accounting" data to Oneita on a quarterly basis, and (3) he never converted any of Evelyn LeBlanc's meager monies to his own personal use, nor had he squandered any of his mother's monies or done anything with his mother's monies that he did not feel was in his mother's best interest. A hearing was conducted on Oneita's motion on December 17 and 18, 2002; however, the issue pertaining to the payment of legal fees was not discussed.
By motion filed on February 14, 2003, Oneita sought to have Darryl and Eva removed from their curatorship positions for noncompliance with LSA-C.C.P. arts. 4562 and 4563. In her motion, she urged that upon their removal, she and Theresa Smith should be appointed as the curatrix and undercuratrix, respectively, of Evelyn LeBlanc. She further requested that Darryl be ordered to provide a full, written accounting of all of Evelyn LeBlanc's assets, as well as an accounting of all fees, expenses, or other funds disbursed from the assets of Evelyn LeBlanc. A hearing on this motion was set for March 31, 2003.[17]
Oneita complained that the facts giving rise to the present suit for breach of fiduciary duty could not be obtained in the first proceeding. Yet, a portion of the July 10, 2002 judgment ordered that on request for copies of records by Oneita, any and all financial institutions having records of Evelyn LeBlanc were to furnish to Oneita, at her cost, copies of the requested records. Moreover, allegations made by Oneita as early as November 2002 suggest that Oneita had knowledge of the actions that form the basis of the current claim for breach of fiduciary duty, which obviously arose out of the same transaction or occurrence as the prior claim. Therefore, we find no merit to her argument that it was not until she had *78 been appointed sole curatrix and after Darryl filed a final accounting that Oneita could have discovered the alleged fraudulent acts and mismanagement by Darryl and Eva giving rise to the cause of action for breach of fiduciary duty.

Identity of Parties
Oneita further attacks the sustaining of the res judicata exception based on the assertion that she did not appear in the prior proceeding as curatrix. For res judicata to apply in a subsequent proceeding, Oneita contends the parties in both suits must appear in the same capacity. In her appellate brief, Oneita submitted that she was serving as undercuratrix when Darryl was relieved as curator by the August 2003 judgment.[18] She maintained that she did not appear in the interdiction proceeding as curatrix nor did she file any pleading in that capacity. Since this breach of fiduciary duty claim was urged by her in her capacity as curatrix of the person and the affairs of Evelyn LeBlanc, we disagree. As noted earlier in this opinion, Oneita was appointed initially as sole temporary curatrix of the person of her mother, which appointment was later modified to co-temporary curatrix of the person of her mother by the July 10, 2002 judgment. This latter judgment also ordered that "with regard to any of the Evelyn LeBlanc accounts (checking, savings, annuities or otherwise)," any and all financial institutions having records of Evelyn LeBlanc shall furnish copies of such records to Oneita upon her request. Although Darryl was the curator of the finances, or affairs, of his mother, Oneita was authorized by the July 10, 2002 judgment to review all of her mother's accounts by virtue of her position as a curatrix of the person of her mother. Therefore, she was acting in the capacity of a "curatrix" of her mother in both proceedings, even though her authority was expanded once she was appointed as the sole curatrix of the person and affairs of her mother by the July 18, 2003 judgment.
Essentially, Darryl argued that in acting in her capacity as curatrix of the person in the interdiction proceeding and as sole curatrix in the instant proceeding, Oneita was acting on behalf of the very same interest  the interdict and/or the interdict's estate  in urging the breach of the very same fiduciary duty. We note that there exists an identity of parties whenever the same parties, their successors, or others appear, so long as they share the same "quality" as parties. Welch v. Crown Zellerbach Corp., 359 So.2d 154, 156 (La.1978); see Horrell v. Horrell, 99-1093 (La.App. 1st Cir.10/6/00), 808 So.2d 363, 374, writ denied, 01-2546 (La.12/7/01), 803 So.2d 971. Identity of parties is satisfied when a privy of one of the parties is involved. Burguieres, 843 So.2d at 1054 n. 3. In its broadest sense, "privity" is the mutual or successive relationship to the same right of property, or such an identification in interest of one person with another as to represent the same legal right. Noel v. Jumonville Pipe & Machinery Co., 245 La. 324, 158 So.2d 179, 184 (1963); see Five N Company, L.L.C. v. Stewart, 02-0181 (La.App. 1st Cir.7/2/03), 850 So.2d 51, 61-62; see also O'Bannon for O'Bannon v. Azar, 506 So.2d 522 (La.App. 1st Cir.), writ denied, 511 So.2d 1158 (La.1987); Middleton v. Parish of Jefferson, 97-324 (La.App. 5th Cir.1/14/98), 707 So.2d 454, 456, writ denied, 98-0403 (La.3/27/98), 716 So.2d 896.
*79 The real party in interest in both proceedings is Evelyn LeBlanc. It is her legal rights and interests that are at issue in both. See Graves v. Fields, 35,411 (La. App. 2nd Cir.12/19/01), 803 So.2d 392, 395, writ denied, 02-0195 (La.4/12/02), 813 So.2d 405. Thus, the fact that Oneita chose to pursue the protection of those rights and interests first as curatrix of the person, then as the sole curatrix of her mother's person and affairs, does not preclude the application of the doctrine of res judicata in this case. By claiming breach of a fiduciary duty on behalf of Evelyn LeBlanc, Oneita is appearing in the same capacity, and, thus, triggers res judicata application.

Conclusion
Therefore, we conclude that the trial court did not err in finding that Darryl and Eva satisfied their burden of proving the essential facts to support the objection of res judicata relative to Oneita's claim for breach of fiduciary duty. For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed to Oneita L. Smith, as curatrix of the person and affairs of Evelyn B. LeBlanc.
AFFIRMED.
NOTES
[1] In a petition for interdiction filed on February 5, 2002, Eva sought to be appointed as curatrix of Evelyn LeBlanc and Darryl sought to be appointed undercurator. In a separate petition filed on February 6, 2002, Oneita sought to be appointed as curatrix of Evelyn LeBlanc. These suits were consolidated by order dated February 21, 2002. Following a hearing, the trial court by judgment dated April 16, 2002, ordered the interdiction of Evelyn LeBlanc and appointed Darryl as curator and Eva as the undercuratrix over the finances of Evelyn LeBlanc. In this judgment, the trial court also appointed Oneita as temporary curatrix and Theresa Smith as the temporary undercuratrix over the person of Evelyn LeBlanc, with these temporary appointments to be reviewed and re-evaluated within 90 days of the hearing date. On review, Eva was added as a temporary co-curatrix of the person, and these temporary appointments were extended on a temporary basis by judgment dated July 10, 2002. This judgment also ordered that, on request for copies by Oneita, any and all financial institutions having records of Evelyn LeBlanc were to furnish to Oneita, at her cost, copies of the requested records.
[2] A "collateral attack" is an attempt to impeach the decree from one proceeding in another proceeding not instituted for the express purpose of annulling such decree. See Nethken v. Nethken, 307 So.2d 563, 565 (La.1975).
[3] For example, a judgment of possession in a succession proceeding could not be annulled for fraud or ill practices in a petitory action in which that judgment forms part of the chain of title. Succession of Schulz, 622 So.2d 693, 696 n. 3 (La.App. 4th Cir.1993), writ denied, 93-2605 (La.1/13/94), 631 So.2d 1161.
[4] Included in those matters is the homologation of an account filed by a legal representative, and any opposition thereto, and matters in which the law permits summary proceedings to be used. See LSA-C.C.P. art. 2592(5) and (11).
[5] We note that Oneita's motion to amend her petition includes allegations setting forth grounds for both an absolute nullity and a relative nullity.
[6] By virtue of LSA-C.C.P. art. 4393, the account of a curator shall contain the same matters required by LSA-C.C.P. art. 3333 for an account of a succession representative.
[7] Prior to the 2000 amendment, curators, like tutors, were bound to serve an account in accordance with LSA-C.C.P. art. 4394, which provides:

A copy of an account filed by a tutor, together with a notice that the account can be homologated after the expiration of ten days from the date of service and that any opposition must be filed before homologation, shall be served in the manner provided for service of citation:
(1) Upon the undertutor, if an annual account or other interim account is ordered by the court;
(2) Upon the former minor, if a final account is rendered after expiration of the tutorship; or
(3) Upon the successor tutor, if a final account is rendered after removal, resignation, death, or interdiction of a tutor.
The filing of an opposition to the curator's account was governed by LSA-C.C.P. art. 4395, which provides:
An opposition to an account may be filed any time prior to homologation. An opposition shall be tried as a summary proceeding.
If no opposition has been filed, the court may homologate the account at any time after the expiration of ten days from the date of service as provided in Article 4394.
The effect of a homologation was determined in accordance with LSA-C.C.P. art. 4396, which provides:
A judgment homologating any account other than a final account shall be prima facie evidence of the correctness of the account.
A judgment homologating a final account has the same effect as a final judgment in an ordinary action.
Provisions similar to LSA-C.C.P. arts. 4394 through 4396 govern the homologation of a final account by a succession representative. See LSA-C.C.P. arts. 3335-3337.
By virtue of the applicable tutorship articles, a final account rendered after removal of a curator, but prior to July 1, 2001, the effective date of the 2000 amendment of the interdiction articles, had to be tried contradictorily against the successor curator if an opposition to the account was filed. Since the appearance of the successor curator was required, service by mail was not authorized, and sheriff's service was required. See Corbello v. Corbello, 171 La. 735, 132 So. 127, 128 (1930); Hail[Hall] v. Courtney, 180 La. 314, 156 So. 364, 366 (1934); see also LSA-C.C.P. arts. 1312-14; Johnson v. Johnson, 94-0018 (La.App. 1st Cir.11/10/94), 645 So.2d 1260, 1262. Thus, a question arises as to the procedural impact of the 2000 amendment. As a result of this amendment, sheriff's service of a copy of the final account and due notice regarding homologation of that account as contemplated by LSA-C.C.P. art. 4394 are no longer required by the Code of Civil Procedure. See LSA-C.C.P. art. 4569(A) and Revision Comments  2000, comment (a).
[8] Former LSA-C.C.P. art. 4554 made various Code of Civil Procedure articles pertaining to the tutorship of a minor, including Articles 4394 through 4396, applicable to the curatorship of an interdict.
[9] On motion of any interested person, or on its own motion, the court may remove a curator or undercurator from the office for good cause. Unless otherwise ordered by the court, removal of the curator or undercurator by the court is effective upon qualification of the appointed successor. LSA-C.C.P. art. 4568.
[10] Darryl was discharged as curator by the August 18, 2003 judgment, which also approved and homologated his final accounting.
[11] Although the judgment states that Oneita's motion to resign her position as undercuratrix was granted, there is no evidence in the appellate record that she was ever appointed and qualified as the undercuratrix. On the contrary, Eva was named undercuratrix of the finances in the April 16, 2002 judgment, and she filed her oath of office for that position on March 6, 2003, prior to the March 31, 2003 hearing that resulted in the July 18, 2003 judgment. Obviously, a clerical error was made.
[12] A copy was also sent to Eva.
[13] This date was set forth in Oneita's proposed pleading entitled "First Amending Petition for Breach of Fiduciary Duty and Damages."
[14] These documents are not included in the appellate record to which our review is limited. See B.W.S., Jr. v. Livingston Parish School Board, 06-1981 (La.8/16/06), 936 So.2d 181, 182 (per curiam).
[15] A lawyer must comply with applicable law requiring notice to, or permission of, a tribunal when terminating a representation. Rules of Prof. Conduct, Rule 1.16(c).
[16] The burden is on the party attacking service to establish otherwise by clear and convincing evidence. Franklin v. Franklin, 470 So.2d 634, 637-38 (La.App. 1st Cir.1985).
[17] This motion triggered the filing of the following documents by Darryl and Eva: Eva's oath of office as to both positions held by her, Darryl's oath of office, a detailed descriptive list of assets and liabilities as of March 8, 2002, a detailed descriptive list of assets and liabilities as of February 1, 2003, an annual accounting for the period of March 8, 2002, through March 8, 2003, and an acknowledgement/ratification affidavit by Darryl and Eva relative to the letters of curatorship and their oaths of office. Additionally, Darryl and Eva filed an opposition to Oneita's motion.
[18] Based on the record, Oneita was serving as the curatrix of the person of Evelyn LeBlanc at that time.