PARRO, J.
IgHoney Bear Lodge, Inc. (HBL) appeals a February 8, 2010 judgment in favor of Adair Asset Management, LLC/US Bank (Adair), granting Adair’s motion for summary judgment and confirming and quieting Adair’s title relating to its acquisition of HBL’s immovable property by tax sale. HBL also appeals a March 19, 2012 judgment denying its motion for new trial, rehearing, or in the alternative, to nullify judgment. This court, ex proprio motu, issued a rule to show cause why HBL’s appeal should not be dismissed as untimely and whether the March 19, 2012 judgment lacked necessary decretal language for a final judgment. Adair also filed a motion to dismiss the appeal. For the following reasons, we withdraw the rule to show cause, deny the motion to dismiss, and maintain the appeal. After review on appeal, we also vacate the judgment of February 8, 2010, reverse the judgment of March 19, 2012, and remand this matter for further proceedings.
BACKGROUND
On September 30, 2004, HBL, a Kentucky corporation, purchased immovable property designated as 300 A & B Live Oak Boulevard in the city of Mandeville, Parish of St. Tammany (the property).[2] In the act of cash sale, the 2004 taxes were assumed by HBL. On December 20, 2004, *9 the St. Tammany Parish Sheriff sent HBL notice that ad valorem taxes on the property were due by December 31, 2004. HBL failed to pay the taxes and, on April 14, 2005, the sheriff sent a notice of the tax delinquency to HBL by certified mail to its listed address of 809 E. Dixie Avenue, Elizabethtown, Kentucky, 42701.[3] Carol O. Schwab, HBL’s secretary and treasurer of record, signed the return receipt for this notice on April 25, 2005.
The taxes remained unpaid, and on June 8, 2005, the property was sold to Adair at the St. Tammany Parish tax sale for unpaid 2004 ad valorem taxes. The sheriff sent certified letters in each of the next three years to HBL at the Dixie Avenue address, advising HBL of the tax sale and its right to redeem the property. These notices were |3returned, “not deliverable,” and HBL did not redeem the property within the three-year redemption period following recordation of the tax sale, as provided in LSA-Const. art. VII, § 25(B)(1). Therefore, on April 6, 2009, Adair filed a petition to quiet tax title, pursuant to LSA-R.S. 47:2266(A)(1).
Adair was unable to serve HBL with citation and the petition via certified mailing to the Dixie Avenue address under the Long-Arm Statutes, LSA-R.S. 13:3201 and 3204. Therefore, it moved for the appointment of a curator ad hoc to represent HBL. On May 7, 2009, the court appointed attorney Joseph T. Oubre as curator, pursuant to LSA-R.S. 47:2266(A)(2) and LSA-R.S. 13:3204(B), and citation and notice were served on him.[4] Oubre sent two certified letters to HBL at its two listed addresses, one of which was the Dixie Avenue address. He also published notice of the petition in the official local newspaper, filed a note of evidence in the record, and filed a general denial on behalf of HBL. The certified letters were returned “not deliverable,” no communication was received from HBL, and no further pleadings were filed by or on behalf of HBL. On November 24, 2009, the court allowed Oubre to withdraw as curator ad hoc for HBL. However, no notice of his withdrawal was sent to Adair.
On December 22, 2009, because HBL had taken no steps to annul the tax sale, Adair filed a motion for summary judgment to confirm and quiet its tax title, requesting service on HBL through Oubre.[5] The sheriffs service return in the record shows domiciliary service was made on Oubre by delivery to his father on January 6, 2010. A hearing on Adair’s motion was held on February 8, 2010. No one appeared for HBL, and the court rendered and signed a judgment in favor of Adair on that date, recognizing Adair as the sole owner of the property. The clerk mailed notice of the judgment to Oubre on March 15, 2010.[6]
On or about June 11, 2010, the occupants of the property were served with a legal notice to vacate the premises. Following the eviction notice, a Louisiana attorney | ¿representing Carol Schwab con *10 tacted Adair’s attorney to advise that his client owned the property. In a letter dated July 1, 2010, Adair’s attorney responded, describing the legal proceedings and advising that Adair was now the legal owner of the property. On October 3, 2011, HBL filed a “Motion for New Trial/Rehearing, or, in the Alternative, Motion to Annul Judgment,” contending that the February 8, 2010 judgment was null, because the motion for summary judgment had not been served on HBL. HBL argued that service on Oubre was insufficient, because he had withdrawn as curator ad hoc before the motion was filed and no longer represented HBL in any capacity. HBL served the motion on Adair and Entrust; Entrust opposed the motion.
A hearing was held on December 22, 2011. After considering the evidence, briefs, and oral argument, the court denied the motion for new trial/rehearing/nullity. A judgment was signed on March 19, 2012. HBL appealed the March 19, 2012 judgment, as well as the February 8, 2010 judgment.
In this appeal, HBL raises three related assignments of error: (1) the trial court abused its discretion in denying HBL’s timely filed motion for new trial from the judgment granting a motion for summary judgment, which was heard and granted without notice of the motion having been served on HBL; (2) the trial court erred in denying HBL’s timely filed motion to annul the judgment granting a motion for summary judgment without evidence that the motion was served on HBL; and (3) the trial court erred in granting summary judgment in favor of Adair, despite the fact that HBL was not properly served with notice of the motion and where a genuine issue of material fact exists as to whether HBL was duly noticed with the tax sale of the property.
This court’s rule to show cause and Adair’s motion to dismiss the appeal as untimely turn on the same issues as those raised in the assignments of error. Therefore, our analysis of and decision on the assignments of error will also guide our decision on the rule to show cause and motion to dismiss.
ANALYSIS
In all of these assignments of error, HBL bases its arguments on the allegation that notice of the motion for summary judgment was not properly served on it, because Oubre had withdrawn as curator ad hoc and no longer represented HBL when the | ¿motion for summary judgment was served on him. In its reasons for judgment on the motion for new trial/rehearing/nullity, the court explained its decision on this issue as follows:
The mover/defendant raises issues concerning the fact that the curator ad hoc was not present at the hearing on the Motion for Summary Judgment, having waived his appearance, and also regarding the curator’s failure to re-enroll prior to being served as curator ad hoc for Honey Bear Lodge, Inc. with the notice of the hearing for the motion for summary judgment. The Court finds that these issues do not create a nullity action. [LSA-C.C.P.] art. 5098 provides that: “The failure of an attorney appointed by the court to represent an unrepresented party, to perform any duty imposed upon him by, or the violation by any person of, the provisions of Articles 5092 through 5096 shall not affect the validity of any proceeding, trial, order, judgment, seizure, or judicial sale of any property in the action or proceeding, or in connection therewith.”
We do not find this explanation persuasive, as there was no indication that Oubre failed to represent HBL or neglected his *11 duties as curator ad hoc. The issue in this case is not whether Oubre properly performed his duties, but whether HBL was properly served with the motion for summary judgment, such that the judgment against it was legally valid.

Service of Process/Nullity of Judgment

A judgment rendered against a defendant who has not been served with process and has not entered a general appearance is an absolute nullity due to a “vice of form.” See LSA-C.C.P. arts.2001 and 2002(A)(2); Tunnard v. Simply Southern Homes, L.L.C., 07-0945 (La.App. 1st Cir.3/26/08), 985 So.2d 166, 168; Avants v. Kennedy, 02-0830 (La.App. 1st Cir.12/20/02), 837 So.2d 647, 654, writ denied, 03-0203 (La.4/4/03), 840 So.2d 1215; Barrios v. Barrios, 95-1390 (La.App. 1st Cir.2/23/96), 694 So.2d 290, 294, writ denied, 96-0743 (La.5/3/96), 672 So.2d 691. Article 2002(A)(2) has also been interpret ed to provide for a nullity action by a defendant-in-rule. See Zenon v. Liberty Mut. Fire & Cas. Ins. Co., 03-0971 (La.App. 1st Cir.4/2/04), 871 So.2d 642, 644, writ denied, 04-1549 (La.10/1/04), 883 So.2d 988. An action under Article 2002(B) to annul a judgment for a vice of form may be brought by any interested person at any time, before any court, and through a collateral proceeding, such as a contradictory motion or rule. See Leonard v. Reeves, 11-1009 (La.App. 1st Cir.1/12/12), 82 So.3d 1250, 1260.
| (Article 1312 of the Louisiana Code of Civil Procedure provides that, other than in certain enumerated exceptions, “every pleading subsequent to the original petition shall be served on the adverse party as provided by Article 1313 or 1314, whichever is applicable.” According to the applicable version of Article 1813, such a pleading may be served by the sheriff or by mail, facsimile transmission, or delivery to the adverse party or his counsel of record; or, if there is no counsel of record and the address of the adverse party is not known, by delivery of a copy of the pleading to the clerk of court. However, the applicable version of Paragraph C of Article 1313 stated:
Notwithstanding Paragraph A of this Article, if a pleading or order sets a court date, then service shall be made by registered or certified mail or as provided in Article 1314.
Article 1314(A) provides that a pleading that is required to be served, but may not be served under Article 1313 because it sets a court date, shall be served by the sheriff by service on the adverse party in any manner permitted under Articles 1231 through 1266, by personal service on the counsel of record of the adverse party, or by delivery of a copy of the pleading to the clerk of court, if there is no counsel of record and the address of the adverse party is not known. The applicable version of Paragraph B of Article 1314 stated that personal service on a partner or office associate of a counsel of record, in the office of such counsel of record shall constitute valid service under Paragraph A of this Article.[7] The burden of persuasion that applies to a party seeking to overcome the rebuttable presumption afforded a completed sheriffs return of service by LSA-C.C.P. art. 1292 is preponderance of the evidence. Accordingly, a party attacking service must prove that, more probably than not, proper service was not made. Hall v. Folger Coffee Co., 03-1734 (La.4/14/04), 874 So.2d 90, 97.
The obvious purpose of Articles 1313 and 1314 is to fulfill the constitutional requirements of due process notice, as set *12 forth in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). See Rawley v. Rawley, 357 So.2d 286, 289 (La.App. 1st Cir.), writ denied, 357 So.2d 1154 (La.1978), cert denied, 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978). At a minimum, the words |7of the due process clause require that deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case. Mullane, 70 S.Ct. at 656-57. To meet such requirements, notice to counsel of record must be effected under circumstances from which it can at least be reasonably presumed that notice resulting from such service will be communicated to the litigant. Rawley, 357 So.2d at 289.
In the Rawley case, service was made on an attorney known by the appellees’ attorney to have previously withdrawn as counsel. This court stated that even though that attorney remained technically counsel of record, that fact did not render such service valid under the circumstances, in which the record showed the appellant had no knowledge of the proceedings to execute a partition judgment until after the partition sale of the property. This court found that the partition sale was null and void for lack of proper service on the appellant. Rawley, 357 So.2d at 289. The Rawley case differs from the matter before us, because in our case, Adair’s attorney did not have notice of Oubre’s withdrawal as curator ad hoc for HBL. However, as in Rawley, the record before us shows that HBL had no notice of the motion for summary judgment that resulted in a judgment recognizing the tax sale to Adair until months after that judgment was rendered.
In Billiot v. Sea Life, Inc., 384 So.2d 1023 (La.App. 4th Cir.1980), discovery sanctions were imposed by the district court on the defendants, resulting in the confirmation of a default judgment against them. The original motion for sanctions had been served on the defendants’ attorney, but the hearing was continued. Two days later, defendants’ attorney withdrew as counsel of record, but the notice of the new hearing date was served on him, not on the defendants. No one appeared on their behalf at the hearing, and sanctions in the form of striking their answer and confirmation of a default judgment were imposed. The appellate court noted that a hearing to impose sanctions requires proper notice. Billiot, 384 So.2d at 1025. Stating that “[s]ervice of notice on an attorney who has withdrawn prior to receipt of that notice is insufficient,” the court held that the order striking the defendants’ answer was null and the default judgment was invalid. Id.
In Hill v. Lopez, 05-0182 (La.App. 1st Cir.2/22/06), 929 So.2d 80, the plaintiffs filed a petition, seeking to rescind the purchase of a business from the defendants. The defendants answered and reconvened, seeking damages for breach of contract and return of movable property used in the business. The answer and reconven-tional demand were served by “fax”; the reconventional demand was never served on the plaintiffs by the sheriff. The defendants then filed a motion for summary judgment, which was served on plaintiffs’ counsel by “fax or U.S. Mail.” No proposed order accompanied the motion, nor did the trial court contemporaneously order the motion set for hearing. The defendants then filed an order to set the motion for hearing, but the record did not contain evidence of any request for service of the order. Nor did the record show any notice to the plaintiffs after the hearing date had been set. Neither the plaintiffs nor their attorney appeared at the hearing on the motion, and judgment on the reconventional demand was rendered in favor of the *13 defendants and against the plaintiffs, dismissing their petition with prejudice. Id. at 82. On appeal, this court concluded that the defendants, as plaintiffs-in-recon-vention, could not properly move for summary judgment on their reconventional demand until after an answer was filed. And, because the plaintiffs had not been served with the reconventional demand, they were under no obligation to file an answer. Therefore, the summary judgment was an absolute nullity. Id. at 83.
Of particular relevance in the Hill case was this court’s interpretation of the prior version and revision of LSA-C.C.P. art. 1313(A). This court stated that the prior version required service by the sheriff of any post-petition pleading that required an appearance or answer and, because the motion for summary judgment required some form of response, answer, and appearance, service could not be perfected by mail. Hill, 929 So.2d at 83. Article 1313(A) was amended in 1999 to allow service of most post-petition pleadings by regular mail or facsimile transmission, subject to the express exception in Article 1313(C), which requires that pleadings or orders setting a court date must be served by registered or certified mail or by the sheriff.[8] This court | concluded that a summary judgment motion is a type of contradictory motion contemplated by Article 1313(C), and that a certificate verifying service “by fax or U.S. mail” is deficient, in that it fails to verify service by registered or certified mail. Id. at 83-84. Therefore, the judgment was null.
In Davis v. Dunn & Bush Const., 01-2472 (La.App. 1st Cir.4/9/03), 858 So.2d 451, the workers’ compensation judge allowed claimant’s counsel to withdraw from representation of her incarcerated client. When the claimant failed to appear for trial several months later, the court dismissed his claims. A motion to nullify the judgment was filed by new counsel and was denied by the court. Id. at 453. On appeal, this court held that the claimant was entitled to written notice of trial when his attorney was allowed to withdraw, stating:
When a trial court provides written notice of a trial date to the attorney of record, but the attorney thereafter moves to withdraw as attorney of record, the trial court bears the responsibility of ensuring that the litigant receives notice of the pending trial in writing. The court can satisfy this notice requirement by reissuing the notice of trial to the unrepresented litigant directly. Otherwise, the court must receive reasonable proof that the withdrawing attorney has notified the client in writing of the trial date. This can be accomplished by attaching to the motion to withdraw a certified letter to the client or other evidence indicating the client has received unequivocal written notice of trial. If the record demonstrates that a litigant did not receive notice of trial, then he was denied procedural due process and fundamental fairness.
Id. at 453. The case was remanded for the court to receive evidence concerning whether the claimant had received notice of the trial.
In another case involving the withdrawal of an attorney, Roman v. LRASIF Claims Mgmt, 11-393 (La.App. 5th Cir.12/13/11), 81 So.3d 895, the appellate court similarly concluded that where the unrepresented litigant’s claim was dis *14 missed on a motion for summary judgment without any indication in the record that the claimant received notice of the hearing from his former attorney or the workers’ compensation judge, due process concerns were implicated. Id. at 898. The court held that, because of the due process implications inherent in the matter, there was no alternative but to reverse the summary judgment and to remand for a new hearing on the motion, to be held after legally sufficient service of notice of the time and place of the hearing on the claimant. Id. at 899; see also Zachary Taylor Post No. 3784 v. Riley, 481 So.2d 699 (La.App. 1st Cir.1985) (judgment vacated when two defendants, whose counsel had previously withdrawn, did not receive notice of the trial date).
In contrast to these cases, in Smith v. LeBlanc, 06-0041 (La.App. 1st Cir.8/15/07), 966 So.2d 66, this court found that service of a petition for homologation of an account on appellant’s counsel was effective, despite the fact that he had filed a motion to withdraw as appellant’s counsel of record before that petition was filed and served on him. In that case, the district court had not yet approved the attorney’s withdrawal when service was made. Therefore, the attorney remained responsible to notify his client about the petition, and service on him was proper as a matter of law. Id. at 75. Unlike the Smith case, in the matter before us, the court had already approved Oubre’s motion to withdraw as curator ad hoc for HBL. Therefore, Oubre had no further responsibility to notify HBL of the motion for summary judgment.
After examining the relevant codal articles and jurisprudence, we conclude that, because Oubre had withdrawn as curator ad hoc for HBL before the motion for summary judgment was served on him, and because the record shows that HBL was not served with and did not receive any notice of the motion or the hearing date set for the motion, the judgment rendered in favor of Adair was absolutely null for lack of proper service on HBL. Adair’s motion for summary judgment was accompanied by an order, setting the hearing date as February 8, 2010. As such, under the applicable version of Article 1313(C), service had to be made either by registered or certified mail or as provided in Article 1314.[9] Although service on HBL was attempted by certified mail, return receipt requested, the letter containing the motion and order was returned, “undeliverable.” Therefore, service had to be made as provided in Article 1314.
Article 1314(A)(1) allows service by the sheriff on the adverse party in any manner permitted under Articles 1231 through 1266. Article 1261(A) provides that service of citation or other process on a domestic or foreign corporation must be made by personal service on any one of its agents for service of process. No such service was made in this case. If such service is not possible for various reasons, Article 1261(B) allows service to be made by personal service on an officer, director, or person named as such in the last report filed with the secretary of state, by personal service on an employee of suitable age and discretion at any place where the business of the corporation is regularly conducted, or by service under the provisions of the long-arm statutes. The record in this case establishes that none of these methods of service was accomplished.
*15 Article 1814(A)(2)(a) allows personal service by the sheriff on the counsel of record of the adverse party or delivery of a copy of the pleading to the clerk of court, if there is no counsel of record and the address of the adverse party is not known. There is no indication that the sheriff delivered a copy of the pleading to the clerk of court.[10] Also, there was no longer any counsel of record for HBL after Oubre’s withdrawal as curator ad hoc. We note further that the sheriffs return on service on Oubre indicates that the notice of the motion for summary judgment, along with a copy of the motion and the order setting it for hearing, were served on Oubre’s father by domiciliary service at Oubre’s address for service of process. However, domiciliary service cannot be made on a corporation. See Rue v. Messmer, 332 So.2d 591, 593 (La.App. 4th Cir.1976). Louisiana Code of Civil Procedure article 1234 provides:
Domiciliary service is made when a proper officer leaves the citation or other process at the dwelling house or usual place of abode of the person to be served with a person of suitable age and discretion residing in the domiciliary establishment.
A corporate entity does not have a “dwelling house or usual place of abode,” nor does it have a ‘“domiciliary establishment.’ ” Id. Therefore, even if Oubre had not withdrawn as HBL’s counsel, domiciliary service on his father would not have met the statutory requirement that the motion for summary judgment be personally served on him by the sheriff. Having determined that service on Oubre did not meet the requirements of LSA-C.C.P. arts. 1313 and 1314, we must conclude that the judgment rendered against HBL on February 8, 2010, was an absolute nullity, Having so concluded, the judgment of March 19, 2012, which denied HBL’s mo-tion for a new trial on the grounds of the Lonullity of the earlier judgment, must be reversed.

Timeliness

Since an absolutely null judgment may be attacked at any time, HBL’s motion for new trial/rehearing/nullity was timely. Moreover, the delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by LSA-C.C.P. art. 1913. See LSA-C.C.P. art. 1974. In this case, notice of the February 8, 2010 judgment was not properly served by the sheriff and was not mailed by the clerk of court to HBL or to HBL’s counsel of record, as required by LSA-C.C.P. arts. 1913(A) and 1974. Therefore, the delay for filing a motion for new trial never commenced.
The judgment denying the motion for new trial was signed March 19, 2012. If a timely application for a new trial has been filed, a devolutive appeal may be taken within sixty days of the date of the mailing of notice of the court’s refusal to grant the application. See LSA-C.C.P. art. 2087(A)(2). The record shows that notice of the judgment denying HBL’s motion for a new trial was mailed on March 19, 2012. HBL’s motion for devolutive appeal was filed May 8, 2012, well within the sixty-day appeal delay established by Article 2087. Therefore, the appeal was also timely, and this court’s rule to show cause why HBL’s appeal should not be dismissed as untimely is withdrawn. Adair’s motion to dismiss *16 the appeal as untimely is denied, and the appeal is maintained.

Decretal Language

This court’s rule to show cause also addressed the issue of whether the March 19, 2012 judgment contained sufficient decretal language. This court’s appellate jurisdiction extends only to “final judgments.” See LSA-C.C.P. art. 2083(A). A judgment must be precise, definite, and certain. Vanderbrook v. Coachmen Indus., Inc., 01-0809 (La.App. 1st Cir.5/10/02), 818 So.2d 906, 913. A final appealable judgment must contain decretal language, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. Johnson v. Mount Pilgrim Baptist Church, 05-0337 (La.App. 1st Cir.3/24/06), 934 So.2d 66, 67. In the Johnson case, the eourt concluded that the | ^judgment, which did not dismiss the plaintiffs claims, did not contain decretal language and could not be considered as a final judgment for the purpose of an immediate appeal.
However, the March 2012 judgment in this case pertains to HBL’s motion to annul the prior judgment of February 8, 2010, That judgment did dismiss all of HBL’s claims, right, title, or interest in the property that was the subject of the suit to quiet title, and recognized Adair as the sole owner of that properly. Therefore, it was a final judgment. The appeal in this case was not taken only from the March 2012 judgment, but also from the February 2010 judgment. The March 2012 judgment states that HBL’s motion for new trial, rehearing, or in the alternative, motion to annul the February 2010 judgment was denied, thus maintaining the previous judgment rendered in favor of Adair. The judgment stated that the motion to nullify the earlier judgment was filed by HBL, that the motion was denied, and that Adair and Entrust were awarded court costs for opposing the motion. Thus, the parties were identified, and the judgment identified the relief sought and the denial of that relief. Accordingly, we find that the judgment contained sufficient decretal language to maintain the appeal. This court’s show cause order with respect to the de-cretal language of the judgment is withdrawn.
CONCLUSION
For the above reasons, we withdraw this court’s show cause order and deny Adair’s motion to dismiss the appeal. The judgment of February 8, 2010, is vacated as absolutely null; the judgment of March 19, 2012, is reversed. This matter is remanded to the trial court for further proceedings. All costs of this appeal are assessed to Adair.
RULE TO SHOW CAUSE WITHDRAWN; APPEAL MAINTAINED. MOTION TO DISMISS DENIED. JUDGMENT OF FEBRUARY 8, 2010 VACATED; JUDGMENT OF MARCH 19, 2012 REVERSED; AND CASE REMANDED.

. The legal address of the property is "LOT 1 BLK 12 WELDON PARK CB 1100489 CB1316 269 CB1381 145 CB 1395 65 CB 1374 770 CB 1459 897 INST No 1321209, All of the said property situated in Ward No. 14 in the Parish of St. Tammany.”

. This address and information concerning HBL’s directors, officers, and agent for service of process were on file with the Kentucky Secretary of State’s office.

. The sheriff’s return on service shows domiciliary service "ON FATHER” at Oubre’s address of record.

. Adair’s attorney also attempted to serve HBL at the Dixie Avenue address by certified mail under the provisions of the Long-Arm Statute. The certified return receipt was returned unsigned and the envelope was stamped "not deliverable.”

.On April 6, 2010, Adair executed a quitclaim deed to the property to Adair Holdings, L.L.C., and on December 8, 2010, the property was sold by Adair Holdings, L.L.C. to Entrust, an unrelated third party.

. Article 1314(B) was amended by 2012 La. Acts, No. 242, § 1, effective August 1, 2012, to broaden the persons on whom service may be made under this paragraph.

. See 1999 La. Acts, No. 1263, § 1, eff. Jan. 1, 2000. Article 1313(A) was further amended and broadened by 2010 La. Acts, No. 185, § 1, eff. Aug. 15, 2010, to authorize service by "electronic means," which, according to the 2010 Comment, was intended to include email and facsimile transmissions.

. Article 1313(C) was amended and paragraph (D) was added by 2012 La. Acts, No, 741, § 1, eff. Aug. 1, 2012, to allow service of a pleading or order setting a court date by actual delivery by a commercial courier.

. Even if such delivery had been made, we have reservations about whether such delivery would meet the requirements of due process, as it seems unreasonable to presume in a case such as this that notice resulting from such service would be communicated to the litigant.