STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-277


SUCCESSION OF FRANK BERNAT



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 39,178
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, J. David Painter, and James T. Genovese, Judges.


AFFIRMED.




Gregory Brian Upton
Gregory B. Odom, II
Gold, Weems, Bruser, Sues & Rundell
P.O. Box 6118
Alexandria, LA 71307-6118
(318) 445-6471
COUNSEL FOR DEFENDANTS/APPELLEES:
    Carolyn Dianne Tuma
    Joanne Kotar McClain
    Succession of Frank Bernat

**Gwenda R. Lamb**
**434 Dove Cove**
**Alexandria, LA 71303**
**(318) 448-1533**
**COUNSEL FOR APPELLANT:**
**Henry A. Bernat**

**EZELL, Judge.**

Henry A. Bernat appeals a trial court judgment granting an exception of res judicata. The co-executrices of the Succession of Frank Bernat filed the exception of res judicata in response to Henry's petition to annul the testament. Henry also raises issues relating to a judgment of homologation. For the following reasons, we affirm the trial court's judgment.

## FACTS

On January 19, 2010, Frank executed a will at Cabrini Hospital in Alexandria, Louisiana. The facts surrounding the execution of the will were set forth in this court's opinion in a previous appeal, *In re Succession of Bernat*, 11-368, pp. 1-2 (La.App. 3 Cir. 11/2/11), 76 So.3d 1287, 1289, *writ denied*, 12-263 (La. 3/30/12), 85 So.3d 122:

> The testator, and his attorney, Mark Watson, composed a will which was executed on January 19, 2010. The statutory will was executed at Cabrini Hospital in Alexandria, Louisiana, in the presence of two witnesses, Connie Lawrence and Chastity Stroud, and was notarized by Watson.
>
> Watson read the will to Bernat. Afterwards, Watson asked Bernat if the contents of the will were what Bernat had wished. Bernat responded in the affirmative in the presence of the witnesses. Watson then asked Bernat to sign the five page will. Being unsteady due to his ailments, Bernat signed the end of the first page with a shaky hand. Because of Bernat's shakiness, Watson decided to direct Bernat to sign an "X" at the end of the second page. Bernat proceeded to sign the third, fourth, and fifth pages with his signature. The fourth and fifth pages both contained two signature lines for the testator: one line in the middle or top two-thirds of the page, and the other at the very end of the page. On the fourth and fifth pages, Bernat signed each upper signature line with his signature, and each lower signature line with an "X." As a result, the first and third pages contain Bernat's signature, the second page contains only an "X," and the fourth and fifth pages, the fifth bearing the attestation clause contain both a signature and an "X." The entire process of signing was conducted in the presence of Watson, who notarized and signed the attestation clause, and the witnesses, who also signed the attestation clause.

Frank died two days later on January 21, 2010. His net estate was valued at just over a million dollars. Frank was never married and had no children of his own. The will named his nieces, Carolyn Tuma and Joanne McLain, as co-executrices. Carolyn and JoAnne filed a petition to probate the will on April 14, 2010. They asked that Frank's assets be divided equally among his eleven surviving nieces and nephews.

Henry, one of the testator's nephews, intervened in the probate proceedings, challenging the interpretation of the will. Henry sought a declaratory judgment contending that Frank's estate should be divided into thirds, with one-third going to the children of each of Frank's three siblings; two of whom had one child each and the third sibling, who had nine children. Under this scenario, Henry would receive one-third of Frank's estate, JoAnne would receive one-third, and the other nine nieces and nephews would receive one-third. The trial court interpreted the testator's will as leaving equal shares to each of the eleven legatees, and Henry appealed to this court. In *In re Succession of Bernat*, 76 So.3d 1287, this court found no error in the trial court's determination that the testator intended to divide his estate equally between the eleven legatees.

After the trial court's hearing and oral ruling on its interpretation of the will on December 13, 2010, Henry then filed a petition to annul the testament on January 5, 2011, setting forth several abnormalities with the will which he claimed rendered it null. He first claimed that Frank had not signed the testament as required by La.Civ.Code art. 1577 because he made an "X". He also claimed that a different attestation clause was required for Frank arguing he did not read the will and did not sign each page of the testament. Finally, he asserted that the witnesses to the will did not read along on an exact copy of the will as provided by La.Civ.Code art. 1579.

The trial court signed the final judgment on January 14, 2011. In his first appeal to this court, Henry also asserted that the will was not in proper form. This court declined to address the issue at the time because it had not been raised in the trial court.

In response to Henry's petition to annul the will, the co-executrices filed several exceptions, including an exception of res judicata, which was filed on February 24, 2011. Judgment denying the exception of res judicata was signed on June 20, 2012, because the original final judgment of the trial court was not introduced at the trial on the exception. On July 3, 2012, the co-executrices filed another exception of res judicata, this time attaching the trial court's January 14, 2011 judgment. The co-executrices argued that Henry should have sought an annulment of the will at the same time he sought a declaratory judgment on the interpretation of the will. A hearing was held on August 6, 2012. On October 11, 2012, the trial court rendered judgment sustaining the co-executrices exception of res judicata. Henry then filed the present appeal.

## RES JUDICATA

The co-executrixes filed the exception of res judicata, claiming that Henry should have also raised the issue of nullity of the will when he sought a declaratory judgment regarding the interpretation of the will. In reviewing this case, we must determine whether the trial court committed manifest error when it sustained the exception of res judicata because it was prior to the case being submitted and evidence was received from both parties. *Steckler v. Lafayette Consol. Gov't*, 11-427 (La.App. 3 Cir. 11/2/11), 76 So.3d 161, *writs denied*, 11-2639, 11-2677 (La. 2/10/12), 80 So.3d 477, 487.

The doctrine of res judicata is set forth in La.R.S. 13:4231. Quoting *Burguieres v. Pollingue*, 02-1385, p. 7 (La. 2/25/03), 843 So.2d 1049, 1053, the

supreme court reiterated the five elements that must be established in order for a judgment to have a res judicata effect on a second action:

> (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

Henry claims that his petition to annul should have been addressed by the trial court before considering the exception of res judicata because a valid and final judgment had not been rendered when he filed his petition to annul. Henry first argues that absolutely null judgments are considered never to have existed and, therefore, cannot have a preclusive effect. He claims that the declaratory judgment is predicated upon an absolutely null order of probate thereby rendering it absolutely null also.

Pursuant to La.Code Civ.P. art. 1872 a person interested under a will "may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." Furthermore, La.Code Civ.P. art. 1874(3) provides that an heir may have a declaration of rights or legal relations to determine questions concerning the construction of wills. A declaratory judgment can serve as a basis for res judicata to another action so long as the two proceedings involved the same transaction or occurrence and the parties existed in the same capacity in both suits. *Travacal Props., LLC v. Logan*, 10-323 (La.App. 3 Cir. 10/6/10), 49 So.3d 466.

## Valid Judgment

Res judicata is provided for in La.R.S. 13:4231. In explaining what constitutes a valid judgment, comment (d) provides, in pertinent part:

> To have any preclusive effect a judgment must be valid, that is, it must have been rendered by a court with jurisdiction over subject matter and over parties, and proper notice must have been given. The judgment must also be a final judgment, that is, a judgment that disposes of the merits in whole or in part.

*See also Kelty v. Brumfield*, 93-1142 (La. 2/25/94), 633 So.2d 1210; and *Interdiction of Wright*, 10-1826 (La. 10/25/11), 75 So.3d 893.

In conjunction with this concept, La.Code Civ.P. art. 2002 provides that judgments are absolutely null which are rendered (1) against an incompetent person, (2) against a defendant who had not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken, or (3) by a court which does not have subject matter jurisdiction over the subject matter of the suit. An action to annul a judgment on these grounds can be brought at any time. La.Code Civ.P. art. 2002(B).

There is no time limitation for attacking an absolutely null judgment because it is not a valid judgment. Defects that render a judgment absolutely null are incurable by prescription. *Warner v. Garrett*, 268 So.2d 92 (La.App. 1 Cir.), *writ refused*, 263 La. 987, 270 So.2d 123 (1972); *Trahan v. Bertrand*, 06-1271 (La.App. 3 Cir. 2/21/07), 952 So.2d 809, *writ denied*, 07-631 (La. 5/4/07), 956 So.2d 612. Whereas, defects that render a judgment relatively null are curable by prescription. *Id.*

It is the declaratory judgment which formed the basis for the co-executrixes' exception of res judicata. Henry has not alleged any of these defects with the declaratory judgment itself. Henry is seeking to annul the probated testament pursuant to La.Code Civ.P. art. 2931. The alleged defects he complains about are with the testament itself. This does not affect the validity of the declaratory

judgment which determined the interpretation to be given to the will. The declaratory judgment itself is valid.

Furthermore, we observe that an action for annulment of a will is subject to a five-year prescriptive period. La.Civ.Code art. 3497. Any defects with the will would be curable by the passage of the prescriptive period. While time has not passed in the instant case, it is clear that defects with a will do not render it an absolute nullity.

Henry has made a subject matter jurisdictional claim regarding the probate of the will. He argues that only one affidavit of death, domicile, and heirship was filed, when La.Code Civ.P. arts. 2821 and 2822 require that it be executed by two people.

In *Succession of Fuller*, 482 So.2d 619 (La.1986), the supreme court adopted the reasons of the dissenting judge in the second circuit when the removal of an administrator was sought because no affidavit of death and domicile establishing the jurisdiction of the district court was filed with the petition to appoint an administrator. The dissenting judge, Chief Judge Hall, noted that the appellant did not contend that the district court was without jurisdiction. He noted that "[t]he failure to file the affidavit which '*may*' serve as proof of jurisdictional facts does not mean the court did not have jurisdiction." *Succession of Fuller*, 480 So.2d 754, 760 (La.App. 2 Cir. 1985). Judge Hall recognized that the failure to comply with the procedural requirement of making proof of jurisdictional facts is easily curable and that no one questioned that the district court had jurisdiction.

We agree that the jurisdictional issues complained of by Henry are not issues that would render the probate proceedings absolutely null under La.Code Civ.P. art. 2002(3). There is no doubt that Frank was domiciled in Rapides Parish at the time

of his death and that the Rapides Parish district court has subject matter jurisdiction over the proceedings. Henry does not contest this fact.

## Final Judgment

Henry also argues that he filed his petition to annul the judgment on January 5, 2011, which was prior to the signing of the final judgment on January 14, 2011. He argues that a final judgment was not in place at the time he filed his petition to annul the will, so it should have been addressed.

In explaining what constitutes a final judgment, comment (d) to La.R.S. 13:4231 provides, in pertinent part:

> The use of the phrase "final judgment" also means that the preclusive effect of a judgment attaches once a final judgment has been signed by the trial court and would bar any action filed thereafter unless the judgment is reversed on appeal. Having the res judicata effect of a judgment attach at the time of final judgment is rendered by the trial court is in accord with our present law on lis pendens, see Code of Civil Procedure Articles 531, 532.

Obviously, a judgment becomes final once signed by the trial judge unless reversed on appeal. Furthermore, the declaratory judgment was upheld by both this court and the supreme court. Therefore, the declaratory judgment was a final judgment on January 14, 2011.

In *Avenue Plaza, L.L.C. v. Falgoust*, 96-173 (La. 7/2/96), 676 So.2d 1077, the supreme court had to consider the res judicata effect of an eviction suit that was filed after a declaratory judgment action but reached final judgment first. The supreme court held that the final judgment in the eviction action became res judicata to the declaratory judgment action, which was still pending. *See also Bunch v. Schilling Distrib. Inc.*, 589 So.2d 502 (La.App. 3 Cir. 1991), *writ denied*, 592 So.2d 1319 (La.1992).

Henry filed his petition to annul the final judgment after the hearing and oral ruling by the trial judge but before judgment was signed. Once the final judgment

7

was rendered in the declaratory judgment action, it became conclusive and could serve as a basis for a res judicata claim to the annulment action. Since we have determined that there was a valid and final judgment in place, we will now address whether the other elements were established supporting the granting of the exception of res judicata.

**Same Parties**

We recognize that the parties in the declaratory judgment action and in the petition to annul are the same. Henry has not contested this issue.

**Cause of Action Existed at Time of Declaratory Action**

Most of the grounds for nullifying the will asserted by Henry were in existence when Henry filed his petition for a declaratory judgment. Furthermore, Henry admits that his allegations of Frank's medical condition preventing him from executing a will became known to him after depositions taken on December 6, 2010, which was one week before the declaratory judgment hearing on December 13.

The issue of Frank's ability to read the will did come up at the hearing. The trial judge inquired of Henry's attorney if the validity of the will was at issue, and she replied that the issue was not before the court at that time. We find that the grounds asserted by Henry for nullifying the will were in existence at the time of the hearing on the declaratory judgment.

**Same Transaction or Occurrence**

What constitutes the transaction or occurrence is to be determined on a case-by-case basis. *Hy-Octane Invs., Ltd. v. G&B Oil Prods., Inc.* 97-28 (La.App. 3 Cir. 10/29/97), 702 So.2d 1057. It is the subject matter of the litigation, principal demand, or action. *Id.* It is the logically-related events that are so connected together to be referred by a single legal name such as a crime, a contract, or a

wrong. *Id.* "All logically related events entitling a person to institute legal action against another generally are regarded as comprising a 'transaction or occurrence.'" *Id.* at 1060.

In *Hy-Octane*, this court found that a suit for breach of contract and a suit for wrongful termination of the contract originated from the same transaction or occurrence, the contract. In *Travcal Properties*, 49 So.3d 466, this court found that two suits which found their basis rooted in the interpretation of an operating agreement arose out of the same transaction or occurrence.

We also find that the suit for declaratory judgment and the petition to annul the will find their basis rooted in the execution and interpretation of Frank Bernat's will. Therefore, both actions arise out of the same transaction or occurrence.

Additionally, we do not find any exceptional circumstances as contemplated by La.R.S. 13:4232 which prevent the declaratory judgment from barring the petition for nullity. Henry was aware of the alleged deficiencies by the time of the hearing on the declaratory judgment. He did not decide to pursue an action to annul the will until the trial court issued its oral ruling declaring that the will provides for a division of Frank's estate equally to his eleven nieces and nephews.

The co-executrixes established all elements necessary to sustain their exception of res judicata. We find no manifest error by the trial judge sustaining the exception of res judicata.

## HOMOLOGATION JUDGMENT

Henry objects to the homologation judgment signed on October 25, 2010. He argues that the co-executrixes never published nor noticed the final tableau of distribution and that the judgment should not have been signed. Henry specifically objects to the amount of attorney fees listed in the judgment.

The trial court found that the judgment homologating the tableau of distribution was final, and the prescriptive period to challenge the judgment had expired. Therefore, the trial court found that the attorney fees set forth in the tableau could not be contested.

On October 22, 2010, the co-executrixes filed a final tableau of distribution. The co-executrixes admit that a blank draft of the tableau judgment was accidentally submitted to the court. On October 25, 2010, the trial court inadvertently signed this judgment prior to the proper delays running. La.Code Civ.P. arts. 3303-3307. There is no indication in the record that notice of the signing of this judgment was sent to anyone.

Pursuant to La.Code Civ.P. art. 3305, Henry requested notice of the filing of the tableau of distribution on July 16, 2010. In his petition for declaratory judgment, Henry admitted he received notice of the filing of the tableau of distribution by certified mail on October 25, 2010. This included the attached blank judgment homologating the final tableau of distribution. On December 13, 2010, Henry filed an opposition to the tableau of distribution, obviously unaware at the time that the judgment had been signed.

Subsequently, the co-executrixes filed an additional tableau of distribution on February 1, 2011, which listed many of the same debts. They too were also obviously unaware that the judgment had been signed. Henry followed with an additional opposition to the tableau of distribution on February 14, 2011. A judgment homologating the interim tableau of distribution was signed on April 11, 2011. The judgment recognized that Henry had filed an opposition but agreed to the payment of certain debts.

Henry is obviously attacking the validity of the October 25, 2010 judgment of homologation and seeking its annulment, arguing that it was signed before the

10

petition for authority to pay the estate debts, was not published, and seven days had not elapsed from the date of publication as required by La.Code Civ.P. art. 3304.

Louisiana Code of Civil Procedure 2004(A) provides that a judgment obtained by fraud or ill practices may be annulled. It has been recognized that Article 2004 is not limited to actual fraud or wrong doing, and courts should look to equitable considerations. *In re Succession of Crumbley*, 06-402 (La.App. 3 Cir. 9/27/06), 940 So.2d 748. "There is actionable fraud or ill practice when (1) the circumstances illustrate a deprivation of the legal rights of the litigant seeking relief, and (2) enforcement of the judgment would be unconscionable and inequitable." *Id*. at 751 (quoting *Succession of Blackwell*, 98-50, p. 5 (La.App. 3 Cir. 5/6/98), 713 So.2d 625, 628, *writ denied*, 98-1983 (La. 10/30/98), 727 So.2d 1169).

An action for nullity of a judgment pursuant to La.Code Civ.P. art. 2004 for vices of substance may not be brought by collateral attack but must be brought by direct action. *Calcasieu Parish Sch. Bd. v. Parker*, 02-339 (La.App. 3 Cir. 10/2/02), 827 So.2d 543, *writ denied*, 02-2719 (La. 1/10/03), 834 So.2d 440. "Thus, the party praying for the nullity of a relatively null judgment must bring his action by means of a petition, and the adverse party must be cited to appear, as in ordinary suits." *Smith v. LeBlanc*, 06-41, p. 7 (La.App. 1 Cir. 8/15/07), 966 So.2d 66, 72. " A direct action can be brought by filing a separate proceeding or by the filing of a pleading in the same proceeding as that in which the offending judgment was rendered." *Id.*

> The limitation envisioned by comment (d) to LSA-C.C.P. art. 2004 prohibits the issue from being raised by way of an affirmative defense, such as in the answer or by exception. Clearly, any of those methods would be a collateral attack, that is, an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling the judgment. The reason for this rule is that a relative nullity involves a factual issue which must be proven by evidence placed in the record.

11

*Id*. (citations and footnote omitted).

Henry has yet to file a petition for nullity, directly attacking the October 25, 2010 judgment. However, his attorney did raise the issue at the August 6, 2012 hearing which is why the trial court addressed it in its reasons for judgment. Henry has not properly attacked the judgment of homologation. However, no objection was made to the argument being raised at the hearing. Therefore, any error in this regard is waived. *Parker*, 827 So.2d 543; *Johnson v. Jones-Journet*, 320 So.2d 533, n. 4 (La.1975).

However, we find that even if Henry did properly attack the October 25, 2010 judgment, the action would not be timely as found by the trial court. Louisiana Code of Civil Procedure Article 2004(B) also provides that an action for nullity based on fraud or ill practices must be brought within one year of the discovery by the plaintiff. The one-year limitation to file an action to annul a final judgment is a period of peremption rather than prescription. *Ellison v. Ellison*, 06-944 (La.App. 1 Cir. 3/23/07), 960 So.2d 155. "Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." La.Civ.Code art. 3458. "Peremption may be pleaded or it may be supplied by a court on its own motion at any time prior to final judgment." La.Civ.Code art. 3460. "Peremption may not be renounced, interrupted, or suspended." La.Civ.Code art. 3461.

"The burden of proof to show that a nullity action was brought within one year of the discovery of the fraud or ill practice is upon the plaintiff." *Ellison*, 960 So.2d at 157. For the purposes of determining when the one-year period to bring a nullity action begins to run, the date of discovery of the fraud or ill practice is the date on which a plaintiff either knew, or should have known through the exercise

of reasonable diligence, of facts sufficient to excite attention and put the plaintiff on guard and call for inquiry, and such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. *Id.*

Henry filed his first appeal with this court on February 2, 2011. That appeal record, which is an exhibit to the present appeal, contained the October 25, 2010 judgment homologating the final tableau of distribution. We find that the presence of that judgment, relied on by Henry, is sufficient to put him on notice that he has a claim. More than one year has passed since the lodging of the first appeal with this court. Therefore, any action to annul the October 25, 2010 judgment would be preempted. We find no error in the trial court's decision that the time for attacking the October 25, 2010 judgment of homologation has passed.

## OTHER ISSUES

Henry has raised an issue concerning the discovery of Frank's medical records relating to Frank's ability to execute the will. Henry also raises an issue concerning the production of the detailed billing records of the attorneys handling the succession, arguing they have not established their entitlement to the fees as listed on the October 25, 2010 judgment of homologation. Since we have sustained the exception of res judicata regarding the attack on the will and find that the judgment of homologation stands, there is no need to address these issues.

For the reasons set forth in this opinion, the judgment of the trial court is affirmed in all respects. Costs of this appeal are assessed to Henry Bernat.

**AFFIRMED.**

13