STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-963

JAMES NORMAN THOMPSON

VERSUS

CHRYSTAL LANDRY THOMPSON

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 223,238
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

Cooks, J., dissents in part and assigns written reasons.

AFFIRMED.

Rodney M. Rabalais
Attorney at Law
Post Office Box 447
Marksville, Louisiana 71351
(318) 253-4622
Counsel for Plaintiff/Appellee:
　　　James Norman Thompson

**Koby D. Boyett**
**Attorney at Law**
**Post Office Box 12746**
**Alexandria, Louisiana 71315**
**(318) 442-9462**
**Counsel for Defendant/Appellant:**
   **Chrystal Landry Thompson**

**KEATY, Judge.**

Former wife appeals a judgment granting former husband's exception of prescription and dismissing her claims against him with prejudice, along with a judgment awarding former husband $25,744 in attorney fees. Former husband answers seeking additional attorney fees for work done on the two appeals relative to this matter. For the following reasons, we affirm and award former husband additional attorney fees.

## FACTS AND PROCEDURAL HISTORY

Chrystal Landry Thompson and James Norman (Norm) Thompson were married in 1991. By judgment dated September 9, 2008, they were granted a divorce pursuant to La.Civ.Code art. 103. They later filed a joint petition to homologate their community property which the trial court signed on August 23, 2010.

Chrystal filed a petition to annul the judgment homologating their community property on August 19, 2011, alleging that Norm was guilty of "fraud, non-disclosure, and ill practices." Therein, she sought rescission of the judgment and an award of tort damages and attorney fees, along with the payment of the costs associated with her filing of the petition to annul. On May 20, 2013, Norm filed a peremptory exception of prescription and request for attorney fees, contending that Chrystal's petition to annul had prescribed because it had not been filed within one year of August 3, 2010, the date she discovered the alleged fraud and ill practice. Chrystal opposed the exception.

After conducting a contradictory hearing on July 29, 2013, the trial court granted Norm's exception of prescription in open court and dismissed all of Chrystal's claims against him with prejudice. Written judgment was signed on

August 12, 2013.[1]  In the interim, Norm filed a motion for attorney fees pursuant to La.Code Civ.P. art. 2004(C), which allows a court to award attorney fees to the party who prevails in an action for nullity of a judgment obtained by fraud or ill practices.  Norm's motion was set for hearing on September 16, 2013.[2]  Before the hearing took place, Chrystal filed a motion for devolutive appeal of the August 12, 2013 judgment, asserting therein that the judgment had been designated as final for purposes of appeal.  The trial court signed an order granting Chrystal's request for appeal on August 26, 2013.  Thereafter, Norm filed a motion to annul the order of appeal, requesting an award of fees and costs, alleging that Chrystal's statement that the judgment had been designated as final was false.  He indicated that Chrystal was trying to deprive him of a hearing on his motion for attorney fees, despite his having reserved his claim for such fees at the close of the hearing on his exception of prescription.  The order granting Chrystal an appeal of the judgment which granted Norm's exception of prescription was annulled by a judgment rendered on October 14, 2013, and signed on October 21, 2013.[3]  Nevertheless, Chrystal paid the estimated costs of appeal, and the record was lodged in this court on October 30, 2013.  On that same date, this court ordered Chrystal to show cause by November 13, 2013, why the appeal "should not be dismissed as taken with an

---

[1] In the judgment, the trial court noted that because it had granted Norm's exception of prescription, there was no need for it to decide a motion for summary judgment that Norm had previously filed seeking the dismissal of Chrystal's claims.

[2] The appeal record contains a transcript of a September 16, 2013 hearing at which the parties argued the merits of Norm's motion for attorney fees.  A statement of the fees Norm's attorney had expended on this matter was admitted as an exhibit during the hearing.  At the close of the hearing, the trial court took the matter under advisement and gave Norm's attorney ten days in which to review the cases cited by Chrystal's attorney and to file a written response if he chose to do so.

[3] On October 24, 2013, Chrystal applied for supervisory writs from the judgment granting Norm's motion to annul her appeal.  On January 22, 2014, this court denied the writ on the basis that it had been rendered moot by our opinion in *Thompson v. Thompson*, 13-1237 (La.App. 3 Cir. 1/22/14) (unpublished opinion).

2

order of appeal which was annulled October 14, 2013." Norm also filed a motion to dismiss the appeal in this court along with a request that he be awarded attorney fees. Chrystal filed a response in opposition to this court's show cause order and to Norm's motion.

In an opinion dated January 22, 2014, this court issued an opinion recalling the rule to show cause and denying Norm's motion to dismiss the appeal and request for attorney fees. *See Thompson v. Thompson*, 13-1237 (La.App. 3 Cir. 1/22/14) (unpublished opinion). Therein, we concluded that although Norm's exception of prescription was coupled with a request for attorney fees and although Norm asked at the hearing to reserve the attorney fees issue, the trial court had not responded to Norm's attempt to reserve the issue, and the August 12, 2013 judgment was silent regarding Norm's request for attorney fees. *Id.* Accordingly, we held that Norm's request for attorney fees was denied by the trial court and that the judgment was final. Citing La.Code Civ.P. art. 2088, we further held that because the issue of attorney fees was reviewable on appeal and the trial court was divested of jurisdiction when it signed the order of appeal, it has no jurisdiction to rescind or annul the perfected appeal. *Id.* Norm applied for, and this court granted, a rehearing concerning our original ruling. Several months later, however, we recalled and vacated our original opinion. *See Thompson v. Thompson*, 13-1237 (La.App. 3 Cir. 3/19/14) (unpublished opinion), *writ denied*, 14-391 (La. 5/16/14), 139 So.3d 1025. On rehearing, we determined that the trial court had inadvertently granted the order of appeal because it clearly indicated that it had not denied Norm's request for attorney fees, but rather had held a hearing on that issue after it granted the order of appeal, thus evidencing its belief that it retained jurisdiction of that issue. *Id.* Accordingly, we set aside the order of appeal as having been

3

inadvertently granted, and we remanded the matter for action consistent with our opinion and for the issuance of a new order of appeal. *Id.* In addition, we granted Norm's motion to dismiss the appeal but denied his accompanying request for attorney fees. *Id.*

Soon after the supreme court denied writs on May 16, 2014, the trial court held a hearing and signed a judgment on May 22, 2014, awarding Norm $27,744 in attorney fees, with interest from the date of the judgment, and declaring that the case was ripe for appeal. The next day, the trial court signed a pleading entitled Suggested Findings of Fact and Reasons for Ruling Submitted by James Norman Thompson on Attorney Fees. Thereafter, Chrystal timely filed a motion for suspensive appeal of the judgment granting Norm's exception of prescription along with the May 22, 2014 judgment awarding Norm attorney fees.

Chrystal is now before this court asserting three assignments of error. She contends that the trial court erred: 1) in finding that her claim for nullity of the partition based on fraud had prescribed; 2) in dismissing her claim for coercion; and 3) in awarding Norm attorney fees under La.Code Civ.P. art. 2004 where there was no judicial determination of fraud or a lack thereof, or alternatively, in awarding Norm fees that are excessive under the circumstances. Norm has filed an answer to Chrystal's appeal, seeking additional attorney fees for the work done in this court to obtain the remand to the trial court and for the work he will incur in defending the present appeal.

4

# DISCUSSION

## *Was Chrystal's Petition for Nullity Prescribed?*

Louisiana Code of Civil Procedure Article 2004 entitled "Annulment for vices of substance; peremption of action," provides as follows:

> A. A final judgment obtained by fraud or ill practices may be annulled.
>
> B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
>
> C. The court may award reasonable attorney fees incurred by the prevailing party in an action to annul a judgment on these grounds.

This court recently discussed the time period provided by La.Code Civ.P. art. 2004(B) in *In re Succession of Bernat*, 13-277 (La.App. 3 Cir. 10/9/13), 123 So.3d 1277, *writ denied*, 13-2640 (La. 2/7/14), 131 So.3d 865. We noted therein:

> The one-year limitation to file an action to annul a final judgment is a period of peremption rather than prescription. *Ellison v. Ellison*, 06–944 (La.App. 1 Cir. 3/23/07), 960 So.2d 155. "Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." La.Civ.Code art. 3458. . . . "Peremption may not be renounced, interrupted, or suspended." La.Civ.Code art. 3461.
>
> "The burden of proof to show that a nullity action was brought within one year of the discovery of the fraud or ill practice is upon the plaintiff." *Ellison*, 960 So.2d at 157. For the purposes of determining when the one-year period to bring a nullity action begins to run, the date of discovery of the fraud or ill practice is the date on which a plaintiff either knew, or should have known through the exercise of reasonable diligence, of facts sufficient to excite attention and put the plaintiff on guard and call for inquiry, and such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. *Id.*

*Id.* at 1286.

"Evidence in support or contravention of the exception may be introduced if the grounds are not apparent from the petition. La.Code Civ.P. art. 931. An appellate court reviews the exception under the manifest error standard of review if evidence is introduced in support or contravention of the exception." *Allain v. Tripple B Holding, LLC*, 13-673, p. 9 (La. App. 3 Cir. 12/11/13), 128 So.3d 1278, 1285.

In *Williams v. Williams*, 09-472, 09-473 (La.App. 3 Cir 11/4/09), 22 So.3d 1165, a former wife filed a petition to nullify her judgment of divorce and a child support judgment rendered in conjunction with her divorce. The former husband filed an exception of prescription, arguing that his former wife had knowledge of "the facts that formed the basis for her action to annul the child custody judgment for more than one year prior to filing the petition for nullity." *Id.* at 1171. After applying a manifest error or clearly wrong standard of review, this court affirmed the trial court's judgment sustaining the former husband's exception of prescription and dismissing the former wife's petition for nullity. *See also McCain v. Cassidy*, 11-124 (La.App. 3 Cir. 6/8/11), 68 So.3d 631.

As previously mentioned, the judgment homologating the community property partition between Chrystal and Norm was signed on August 23, 2010, and Chrystal filed her petition to annul that judgment on August 19, 2011. In the petition to annul, Chrystal stated that Norm received two pieces of immovable property formerly owned by the community in the partition, one of which was a twenty-acre tract in Rapides Parish which they referred to as the Farm Property. She explained that a company entitled Acadian Gas Pipeline System (Acadian) had filed a petition against Norm on September 24, 2010, seeking to expropriate portions of the Farm Property in order to construct a natural gas pipeline since their

6

prior negotiations with Norm for rights of way and servitudes had failed. Chrystal further explained that Norm had answered the expropriation suit, claiming that the compensation that Acadian had offered to him was insufficient to cover the damages he would sustain as a result of the pipeline's presence on his property. According to Chrystal, Acadian and Norm had entered into two agreements in December 2010 creating rights of way and servitudes relating to the pipeline in exchange for the payment of $10 "and other good and valuable consideration." She alleged, however, that Acadian had paid other landowners different consideration in the neighborhood of $17,000 plus per acre for similar agreements. Chrystal alleged that Norm knew of the proposed pipeline and potential increased income of the Farm Property, and he had begun negotiations with Acadian prior to their agreement to settle the partition litigation between her and Norm. She further alleged that Norm had "misrepresented and/or suppressed" that knowledge and that he had "fraudulently, willfully, and knowingly failed to disclose the existence of the pipeline construction and the compensation available to the owners of the Farm property" to her, as the then co-owner of the property, and this should serve to vitiate her consent to the judgment homologating their community property.

In a later filed first supplemental and amending petition to annul, Chrystal alleged that Norm had "exercised supervision and control of the community property assets, and the financial and business affairs of the community" during their marriage and that he had been in control of the community's assets since their separation, leaving her without access to any community funds. She further alleged that her "financially desperate state . . ., combined with" Norm's refusal "to disclose the true value of the community property as compared to the financially advantageous position" of Norm, "resulted in a coercion of [her] by [Norm] to

7

settle the community affairs." According to the supplemental petition to annul, Chrystal and Norm had purchased the 809.05 acre Farm Property for $815,000, or $1,007 per acre, however, Acadian had paid Norm $342,000, or $17,500 per acre, in exchange for a permanent right of way for its pipeline. As a result, Chrystal claimed that the true market value of the Farm Property when it was expropriated was $17,500 per acre. Chrystal claimed that Norm's first discussion with Acadian about the expropriation occurred in December 2009 and that Acadian had made an initial offer of "$112,398 in April 2010, before their community property settlement."

In his memorandum in support of his exception of prescription, Norm contended that the evidence showed that Chrystal received a telephone call from an Acadian representative before August 3, 2010, during which she was told about its negotiations with Norm concerning its desire to build a gas line across the Farm Property and the likelihood that it would file an expropriation suit. Norm also contended that Chrystal and her attorney had "multiple conversations" about the issue between August 3, 2010, and August 18, 2010, yet she did not file her petition to annul until August 19, 2011, more than one year after her discovery of his alleged non-disclosure.

The hearing on Norm's exception of prescription took place on July 29, 2013, during which Chrystal's testimony was elicited by Norm's counsel who called her on cross-examination. During that testimony, six exhibits were introduced into evidence on Norm's behalf: The first two exhibits were copies of the Voluntary Partition Petition and the Petition for Homologation filed in this matter. The third exhibit was a copy of Chrystal's Petition to Annul Judgment and for Damages. Chrystal admitted that she was represented by counsel when the

8

joint petition to homologate their community property was presented to the trial court and signed on August 23, 2010. Chrystal stated that she had received a telephone call from an unidentified man on August 2, 2010, who told her that he was at the courthouse examining the title of the Farm Property and it listed her as co-owner. She said that she told the man that she had deeded her interest in the property to Norm during the previous week. Chrystal explained that she had spoken to her then-attorney, Brenner Sadler, about the matter at that time and that she was aware of the "talk about a pipeline coming through that area" and that Norm had been offered $400 per rod. Chrystal claimed, however, that she did not know how much money was at issue and that she did not understand the terms used by surveyors, such as what was meant by "per rod."

During Chrystal's testimony, the fourth exhibit offered on Norm's behalf was an email to Chrystal from Mr. Sadler on August 3, 2010, wherein he informed her that a gas pipeline was coming through the Farm Property area and Norm had been asked to sell a right of way. The email stated that according to someone named Tammi Salazar, Norm opposed the pipeline because it might damage the property, and he stated that there would not be a deal "unless the law makes him allow it." The email concluded with Mr. Sadler stating that he was going to speak to "Steve" to find out how much money was at stake and "whether we have an issue." The next exhibit offered by Norm's counsel was an email exchange between Chrystal and Mr. Sadler, dated August 5, 2010. In the first email from Chrystal to Mr. Sadler, Chrystal stated that:

> The man that I spoke with said that Norm made them a proposal of $1200.00 per rod, but all they were willing to pay was $400.00 per rod (16.5 feet). What led him to me was a title search in preparation for filing suit . . . eminent domain.

From what I could discern, it is two parcels, totaling a 5/5 acre strip, at 50 feet wide. I have no surveyor training, therefore, not a clue as to how many feet are involved. . . .

In the second email, Mr. Sadler told Chrystal:

I will have my real estate partner try to compute the amount of money involved. We can then decide whether this was a material failure to disclose or whether it is just part of what goes with the land. For example, we know that he may sell the land over the years, and you will have not claim to that money.

In the meantime, I am working on the settlement agreement. . . .

In the final email dated August 5, 2010, Chrystal told Mr. Sadler:

I understand that I have no future claim, believe me. If it turns out to be a minimal return on a maximum investment of time and resources, then I will not pursue the issue; however, he has been in contact and conversation/negotiations for over a month with these people, and I seem to remember now that he was contacted several months ago, according to a comment made by my oldest son. But . . . we shall see. There were a few other things that were not disclosed. Each, of course, coming to light now that he has full and unchallenged reign over all things. Good for him.

The last exhibit offered at the hearing by Norm in conjunction with his exception of prescription was a memo from Contract Land Staff project representative Harold Kennedy dated August 2, 2010, stating:

I got a copy of the divorce decree from the Rapids [sic] Parish Court House. The decree did not deal with the distrubition [sic] of the land affected by the pipe line. I contacted Chrystal to make an offer and to get her address so that we could send her a final offer letter. She said that she had signed a deed to Dr. Thompson last week, deeding her interst [sic] to him. She then demanded to know what our offer was to Dr. Thompson as she was not aware of our offer before she deeded the land to him. I told her that I did not have the file with me and did not give her the figure.

On direct examination by her attorney, Chrystal stated that Norm never discussed the pipeline matter with her. She claimed that she learned the pipeline had been placed across the Farm Property and that Norm had been paid $342,000 in the October 2011 when she retained her current attorney, Koby Boyett.

10

Following the hearing, the trial court granted the exception of prescription in open court and dismissed all of Chrystal's claims. In its written reasons for judgment, the trial court cited *Williams* with approval, noting that therein this court held "that the one-year period provided in La. C.C.P. art. 2004 began to run when the Respondent had actual knowledge of the Mover's alleged fraud, not when the Respondent was informed by her counsel that she could have disputed same." The trial court was not persuaded by Chrystal's argument that she was not aware of Norm's alleged fraud until she had knowledge of the existence of the pipeline proposal and the $342,000 payment that Norm received in December 2010 and continued to receive into 2011. The trial court wrote:

> Thus, this Court has determined that the conversation held between [Chrystal] and the Acadian representative on August 2, 2010 provided sufficient constructive knowledge to which [Chrystal] knew or should have known of [Norm]'s alleged non-disclosure of the servitude.
>
> Specifically, [Chrystal] was emailed by her then-attorney concerning the right of way, and prior to that she was clearly and unambiguously presented with an offer to sell her property to a 3d party, to which she thereby **demanded** to know what the inquiry concerned and additional information from Acadian. These given facts suggest that [Chrystal] had **more than** a "mere apprehension" that something was wrong. Therefore, this Court finds that the information [Chrystal] obtained prior to August 19, 2010 concerning the servitude was sufficient grounds to constitute a discovery of the alleged fraud and ill practices committed by [Norm].

Chrystal testified in support of her claim that she was not sufficiently aware of the alleged fraud perpetrated upon her by Norm until October 2011 when she retained her current attorney and learned that Norm had been paid $342,000 for the pipeline to cross over the Farm Property. Norm countered Chrystal's assertion with evidence to support his claim that she had enough information about the proposed pipeline to give her much "more than a mere apprehension that something might be wrong" more than one year before she filed her petition to

annul on August 19, 2011. *Griffin v. Kinberger*, 507 So.2d 821 (La.1987). The trial court was persuaded by Norm's evidence. After having reviewed the testimony and evidence, we are convinced that the trial court's grant of Norm's exception of prescription was not manifestly erroneous. Our finding is bolstered by the fact that Chrystal was represented by an attorney and had, in fact, sought advice from him when she found out about the proposed pipeline. Chrystal's first assignment of error lacks merit.

### *Was Chrystal's Coercion Claim Properly Dismissed?*

When the trial court granted Norm's exception of prescription in open court, Chrystal's attorney questioned whether the dismissal included the coercion claim. The trial court responded in the affirmative, noting that "if you [are] talking about coercion then you knew what was going on."

In her arguments before the trial court and on appeal to this court, Chrystal insists that her claim for coercion, which she asserted in her supplemental petition to annul, was not before the trial court when it heard Norm's exception of prescription. At the hearing, Norm disputed that Chrystal's alleged claim of coercion constituted a separate cause of action, noting that even if that was the case, any such claim arose out of the same transaction and occurrence as did her fraud claim. Citing La.Code Civ.P. art. 927(B), Norm submits that the trial court had the authority to, and did, in fact, find that Chrystal had no cause of action to annul a judgment based on coercion. Chrystal fails to cite any jurisprudence in opposition to Norm's assertion.

The judgment granting Norm's exception of prescription dismissed all of Chrystal's claims against him. To eliminate any possible uncertainty about the basis of the dismissal of her coercion claim, we hereby on our own motion notice

12

that Chrystal failed to state a cause of action to annul the judgment homologating their community property based on any alleged coercion committed upon her by Norm. There is no merit to Chrystal's second assignment of error.

## *Was the Award of Attorney Fees to Norm Proper?*

Chrystal contends that the trial court erred in awarding Norm attorney fees under La.Code Civ.P. art. 2004(C) because any award of attorney fees under that provision is optional rather than mandatory. She further contends that Article 2004(C) "presupposes a judicial determination of a lack of fraud or ill practices."[4] In the alternative, Chrystal claims that even if Norm was entitled to an award of attorney fees, the $25,744 fee awarded in this matter is unreasonable.

In *McCain*, 68 So.3d 631, this court affirmed the trial court's award of $2,500 in attorney fees to a homeowner who successfully defended herself against a contractor's nullity action, which was dismissed on the homeowner's exception of prescription. We noted that, at the hearing on the exception, counsel for the homeowner stated that the homeowner had incurred $2,500 in attorney fees in the case, which amount was not disputed.

In its written reasons for judgment regarding its judgment awarding attorney fees to Norm, the trial court noted the following:

> This court finds that there is justification for an award of fees to Norm in this case because Chrystal misrepresented that she had no knowledge when in fact she had knowledge. Further there is justification to award fees incurred by Norm in this court up and through the hearing to annul the order of appeal because the motion for appeal also had a misrepresentation by Chrystal as to the status of the judgment to be appealed from: it was a partial judgment and she represented it was final judgment for appeal purposes when it was not, contributing to this court's signing of the order of appeal when it should have not have been signed, as acknowledged by this court when the order annulling the order of appeal was signed.

---

[4] Chrystal fails to cite any jurisprudence in support of this contention.

13

In setting the amount of attorney fees awarded to Norm, the trial court indicated that it had considered the record of the proceedings, the detailed bill submitted by Norm's counsel, and the factors set out by this court in *Domite v. Imperial Trading Co., Inc.*, 94-16 (La.App. # Cir. 8/3/94), 641 So.2d 715, regarding what should be considered when making an attorney fee award.

"The appellate court reviews an award of attorney's fees for an abuse of discretion." *Covington v. McNeese State Univ.*, 12-2182, p. 6 (La. 5/7/13), 118 So.3d 343, 348. Given the record before us, we find no abuse of discussion in the attorney fee award rendered by the trial court in this matter. Chrystal's third assignment of error lacks merit.

### *Norm's Answer to Appeal*

Norm answered Chrystal's appeal to seek additional attorney fees for the work done in this court to obtain the remand to the trial court and for the work he will incur in defending the present appeal. Chrystal opposes the relief sought in Norm's answer, claiming that the trial court already awarded Norm $2,500 for the work done to obtain the remand and that he should not be allowed a double recovery. In addition, she contends that her appeals were not frivolous. In response to Chrystal's assertions, Norm points out that the trial court's May 23, 2014 reasons for ruling clearly state that $2,500 of the total $25,744 attorney fee award was for the work done in that court, rather than in the appellate court, to annul the order of appeal. Norm also clarifies that his request for additional attorney fees from this court stems not from a claim that Chrystal's two appeals were frivolous, but instead from this court's jurisprudence indicating that when a party is awarded attorney fees at trial and later successfully defends an appeal, an

14

additional attorney fee for defending the appeal is merited. *See Frank v. Kent Guidry Farms,* 01-727, (La.App. 3 Cir. 5/8/02), 816 So.2d 969, 973, *writ denied,* 02-1608 (La.6/27/03), 847 So.2d 1273.

In the decree of our March 19, 2014 opinion in which we, on rehearing, granted Norm's motion to dismiss Chrystal's first appeal, we stated that his request for attorney fees was denied. Having so ruled at that time, we decline to revisit the issue. Upon remand, however, the trial court awarded Norm a significant amount of attorney fees, which we have herein found to be reasonable. Accordingly, we award Norm an additional $2,800 for the work done on this appeal.

## DECREE

For the foregoing reasons, the judgments of the trial court granting James Norman Thompson's exception of prescription and dismissing Chrystal Landry Thompson's claims against him and granting James Norman Thompson $25,744 in attorney fees are affirmed. We notice on our own motion that Chrystal Landry Thompson failed to state a cause of action for nullity based on any alleged coercion committed upon her by James Norman Thompson. We award James Norman Thompson attorney fees in the amount of $2,800 for the work done on this appeal. All costs of this appeal are assessed against Chrystal Landry Thompson.

**AFFIRMED.**

JAMES NORMAN THOMPSON

VERSUS

CHRYSTAL LANDRY THOMPSON

**COOKS, J., dissenting in part.**

I agree with the portion of the majority opinion affirming the grant of the exception of prescription. However, I dissent from the portion affirming the award of $25,744.00 in attorney fees.

I find the award of attorney fees does not fall within enunciated grounds found in La.Code Civ.P. art. 2004 and the amount awarded is certainly excessive given the facts of the instant case.

Louisiana Code of Civil Procedure Article 2004 provides as follows:

A. A final judgment obtained by fraud or ill practices may be annulled.

B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.

C. The Court may award reasonable attorney fees incurred by the prevailing party in an action to annul a judgment on these grounds.

The statute seems clear that its intent is to allow for an award of reasonable attorney fees to the prevailing party who *gets a judgment annulled based on fraud or ill practices*; i.e., a punitive award against the losing party who either committed fraud or ill practices. In this case, Norm did not even obtain a judgment that determined he did not commit fraud or ill practices, but rather simply won an exception of prescription due to Chrystal's failure to file her petition to annul timely. Thus, I find an award of attorney fees in this matter is not in accord with

1

the intent of La.Code Civ.P. art. 2004, particularly given the fact an award of attorney fees is only discretionary.

Moreover, even if is it held an award of attorney fees is appropriate in this matter, the amount awarded is clearly excessive. I agree with Chrystal that the only portion of attorney fees Norm would be entitled to, if any, would *relate to the proceedings involving the exception of prescription*. Clearly the trial court awarded all attorney fees incurred in all the proceedings, a great majority of which were necessitated by confusion created by the trial court and to a lesser degree, this court. The following excerpt from Norm's attorney at the hearing on the motion for attorney fees shows much of what was submitted as attorney fees was not related to the exception of prescription:

> But relative to the time devoted to the case, I just want to remind – call your attention to the fact there was a companion case against the Provosty Firm and then there was the – the expropriation suit, then there was the underlying partition suit. So, in effect I had to deal with four different suits in order to make the analysis to get to this point here today.

Thus, I find the award of all the submitted attorney fees made by Norm's attorney is not reasonable. This is particularly so when the record is clear that Norm received payments of $342,000.00 for the pipeline right of way following the community property partition – one-half of which Chrystal may have been entitled to claim except for her untimely protestation. To now impose such an unreasonable attorney fee award on Chrystal seems unduly harsh. Therefore, I dissent from the portion of the opinion affirming the award of $25,744.00 in attorney fees to Norm.