STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-134


DARREL D. RYLAND

VERSUS

CONSTANCE RYLAND


**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 94-588
HONORABLE KERRY L. SPRUILL, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, Billy H. Ezell, Phyllis M. Keaty, D. Kent Savoie, Van H. Kyzar, and Jonathan W. Perry, Judges.

**Keaty, J., dissents and assigns written reasons.**
**Cooks, J., dissents for the reasons assigned by Judge Keaty.**
**Savoie, J., dissents with written reasons.**


**AFFIRMED.**

**Steven J. Lane**
**John S. Creevy**
**Charles M. King**
**Herman, Herman & Katz, LLC**
**820 O'Keefe Avenue**
**New Orleans, Louisiana 70113**
**(504) 581-4892**
**Counsel for Defendant/Appellant:**
        **Constance Ryland**

Jennifer J. Greene
Attorney at Law
820 O'Keefe Avenue
New Orleans, Louisiana 70113
(504) 264-2888
Counsel for Defendant/Appellant:
    Constance Ryland

Harry J. Philips, Jr.
Michael S. Walsh
Ryan K. French
Taylor, Porter, Brooks & Phillips, LLP
Post Office Box 2471
Baton Rouge, Louisiana 70821-2471
(225) 381-0262
Counsel for Plaintiff/Appellee:
    Darrel D. Ryland

**PICKETT, Judge.**

Defendant/Appellant, Constance Ryland, appeals the trial court's judgment in favor of Plaintiff/Appellee, Darrel D. Ryland, finding that their community property regime was terminated on June 15, 1994. For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

Constance and Darrel were married on August 9, 1975. On June 15, 1994, Darrel filed a Petition for Divorce. On July 13, 1994, the trial court issued a Judgment on Rule regarding alimony and issues concerning their minor children, i.e., child support payments, health insurance/medical expenses, domicile, joint custody, and holiday visitation. On August 12, 1994, Darrel filed a Rule for Judgment Decreeing Separation of Property. On that same day, the trial court issued a Judgment on Rule "decreeing a separation of property and dissolving the community property . . . retroactive to the date of filing of the Rule for Judgment Decreeing Separation of Property." The parties reconciled but eventually were divorced on February 20, 2014, pursuant to a Judgment of Divorce.

During their marriage, the parties executed a Partial Partition of Community Property on January 20, 1995 (hereinafter the "1995 partition"), which provided, in pertinent part:

> [Darrel and Constance] declare that they are currently living separate and apart as evidenced by the Petition for Divorce as filed with the 12[th] Judicial District Court . . . Civil Suit No. 94-0588-A, and that they now desire to settle and liquidate the community which formerly existed between them and that they have agreed to settle the same in the manner hereinafter set forth:
>
> . . . .
>
> The parties hereto discharge each other from any further accounting to the community which formerly existed between them; the same being fully liquidated as above set forth . . . .

. . . .

The parties agree that the community of acquets and gains formerly existing between them was ended as of June 15, 1994, and that each debt whatsoever incurred by either party after said date . . . shall be considered the separate obligation of the party that incurred the debt.

The parties executed another Partial Partition of Community Property in January 2000 (hereinafter the "2000 partition"), which provided, in pertinent part:

[Darrel and Constance] did declare that they now desire to settle and liquidate the community which formerly existed between them and that they have agreed to partially settle the same . . . .

. . . .

The parties hereto discharge each other from any further accounting to the community which formerly existed between them; the same being fully liquidated as above set forth and both parties receiving proportionate shares equal in value; each party acknowledging full consideration for this partition.

. . . .

The parties agree that the community of acquets and gains formerly existing between them was ended as of June 15, 1994[.]

Both the 1995 partition and the 2000 partition were authentic acts filed in the court records.

On August 24, 2012, the trial court issued a judgment terminating the community property regime between Constance and Darrel pursuant to their joint Petition for Approval of Matrimonial Regime of Separate Property and Matrimonial Agreement, For Termination of Matrimonal Regime of Community Property, and for Entry of Judgment. On that same date, the parties also submitted a Consent Judgment of Partition of Community Property which stated that they "were married on August 9, 1975, and their community property regime terminated on 24th of August, 2012, pursuant to the Judgment of this Court signed on 24th August, 2012"

2

(hereinafter "2012 consent judgment"). This consent judgment also contained the following terms:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the parties do hereby confirm and ratify: the Partial Partition of Community Property executed by and between them on or about January 20, 1995; and the Partial Partition of Community Property executed by and between them on or about the 7th day of January, 2000; and both parties acknowledge that the property partitioned to them therein is and has been, and will continue to be, their separate property from the date of those respective partial partitions; and that neither party has any claims against the other, in any fashion whatsoever, regarding who owns the property previously partitioned, or for reimbursement for the use of any of those separate properties or to improve the community of acquets and gains or the separate property of the other spouse; and and all such claims are hereby knowingly waived and compromised, without itemization or limitation.

On May 11, 2016, Constance filed a Petition to Rescind the Partition of Community Property, which sought to rescind the 2012 consent judgment under La.Civ. Code art. 814 and requested her one-half interest in and to the community property that formerly existed between her and Darrel as of August 24, 2012. Pursuant to another consent judgment dated March 10, 2017, and in an attempt to simplify the matter, the parties agreed to a hearing before the trial court to determine the issue of whether the community property regime terminated in June 1994 as opposed to August 2012. The hearing on that issue occurred on May 22, 2017, after which both parties filed post-trial memoranda. On September 25, 2017, the trial court issued Written Reasons for Ruling (hereinafter "written reasons") and found that the community property regime was terminated on June 15, 1994. A judgment ratifying the written reasons was signed by the trial court on November 15, 2017. Constance appealed.

On appeal, Constance asserts the following assignments of error:

1. The trial court erred in relying on case law which was superseded by revisions to the statute.

2. The trial court erred in ignoring two valid judgments and altering the date that the parties' community terminated based on an authentic act.

3. The trial court erred in relying on a Partial Partition of Community Property to determine when the community terminated when there was a valid judgment on August 12, 1994 which terminated the community and that judgment was vacated or superseded by the August 24, 2012 proceedings.

4. The totality of the circumstances prove that the parties did not execute a matrimonial agreement to the contrary before they reconciled.

## STANDARD OF REVIEW

The trial court's factual findings are reviewed under the manifest error standard of review. *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). Applying the manifest error standard of review, in order to reverse a trial court's factual findings, an appellate court must review the entire record and conclude that (1) a reasonable factual basis does not exist for the trial court's finding and (2) the record establishes that the finding is clearly wrong or manifestly erroneous. *Id*.

On the other hand, an appellate court reviews questions of law de novo. *Speyrer v. Gray Ins. Co.*, 11-1154 (La.App. 3 Cir. 2/1/12), 83 So.3d 1231. De novo review is a determination of whether the trial court was legally correct or incorrect in its application of the law. *Id*. "If the trial court's decision was based on its erroneous interpretation or application of the law, rather than a valid exercise of discretion, such incorrect decision is not entitled to deference by the reviewing court." *Id*. at 1233 (quoting *Citgo Petroleum Corp. v. Frantz*, 03-88, p. 4 (La.App. 3 Cir. 6/4/03), 847 So.2d 734, 736, *writ denied*, 03-1911 (La. 10/31/03), 857 So.2d 484).

## DISCUSSION

The lone issue presented to the trial court was the determination of the date that the community terminated. The parties agreed for the trial court to determine the limited issue of the date that the community terminated prior to ruling on the merits of Constance's petition to rescind for grounds of lesion. The trial court determined that the community terminated on June 15, 1994, which was the date stated in the 1995 and 2000 partition documents as the termination date of the community regime, and certified the judgment as final and appealable.

Our review of the record reveals that Darrel filed for divorce in 1994. The trial court rendered a separation of property judgment in 1994 in accordance with La.Civ.Code art. 2374 on the ground that the parties had lived separate and apart for the requisite amount of time. At that time, the effect of a separation of property judgment was governed by La.Civ.Code art. 2375(B) (emphasis added) and provided:

> If a judgment has been rendered on the ground that the spouses were living separate and apart after the filing of a petition for divorce without having reconciled, **a reconciliation reestablishes the regime of community** property between the spouses retroactively to the day of the filing of the motion therefor, **unless prior to the reconciliation the spouses execute a matrimonial agreement to the contrary**. This agreement need not be approved by the court and is effective toward third persons when filed for registry in the manner provided by Article 2332. The reestablishment of the community is effective toward third persons when a notice thereof is filed for registry in the same manner.

Therefore, according to La.Civ.Code art. 2375(B), while the community regime would generally be automatically re-established upon reconciliation after the judgment of separation, there can be a matrimonial agreement to the contrary, prior to reconciliation, which does not need court approval.[1] Accordingly, the 1995 partition and 2000 partition can be considered matrimonial agreements prior to

---

[1] Former La.Civ.Code art. 2375(B) and present La.Civ.Code art. 2375(B) are similar.

5

reconciliation that terminate the community as of June 1994, which is the date stated in those authentic acts. Specifically, the 1995 partition indicates that Constance and Darrel "are currently living separate and apart as evidenced by the Petition for Divorce." The 1995 partition and the 2000 partition state that the parties "desire to settle and liquidate the community which formerly existed between them." Both partitions further provide that "[t]he parties agree that the community of acquets and gains formerly existing between them was ended as of June 15, 1994[.]"

According to the record before us, Constance and Darrel did not divorce until February 2014. Therefore, the next question is whether, following the 2000 partition, they subsequently re-established a community regime. Louisiana Civil Code Article 2329 provides:

> Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy.
>
> Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.
>
> During the first year after moving into and acquiring a domicile in this state, spouses may enter into a matrimonial agreement without court approval.

Additionally, a matrimonial agreement "shall be made by authentic act or by an act under private signature duly acknowledged by the spouses." La.Civ.Code art. 2331.

The 1995 and 2000 authentic acts clearly evidenced the intent of the parties to establish a separate property regime dating back to June 15, 1994. At the hearing on August 24, 2012, both Darrel and Constance expressly confirmed that they executed both documents, and that the consent judgment pending before the court ratified both of those instruments. The trial court found that this constitued an effort

by the parties to secure court authority for the 1995 and 2000 Partial Partitions of Community Property, which expressly terminated the community of acquets and gains effective June 15, 1994. We agree with that conclusion. We find no manifest error in the trial court's conclusion that the community property regime terminated effective June 15, 1994.

## DECREE

For the above reasons, the trial court's judgment in favor of Darrel D. Ryland is affirmed. All costs associated with this appeal are assessed to Constance Ryland.

**AFFIRMED.**

**DARREL D. RYLAND**

**VERSUS**

**CONSTANCE RYLAND**

**KEATY, Judge, dissenting.**

I respectfully dissent from the majority opinion, and I would reverse the appealed judgment.

The majority finds that the community property regime terminated on June 15, 1994. In my opinion, the documents filed in connection with the 2012 proceedings, as shown in the record, constitute a matrimonial agreement to re-establish the community regime retroactive to the date of Constance and Darrel's marriage, and then terminate as of August 24, 2012. On August 24, 2012, for the first time, Constance and Darrel jointly filed a Petition for Approval of Matrimonial Regime of Separate Property and Matrimonial Agreement, For Termination of Matrimonial Regime of Community Property, and for Entry of Judgment, as required by La.Civ.Code art. 2329. In their joint petition, the parties acknowledged the following: that "[a] community of acquets and gains exists between petitioners . . . but petitioners desire to enter into a Matrimonial Agreement for a regime of separation of property"; that "[t]his Matrimonial Agreement terminates their community property regime and establishes a regime of separate property"; and that they "understand the legal ramifications of contractually adopting a regime of separation of property in place of the legal regime of community property heretofore existing between them." Attached to the joint petition is a document signed by both

parties, two witnesses, and a notary declaring same. Both parties appeared in court on August 24, 2012 and testified under oath that they understood the governing rules and principles. After the hearing, the trial court rendered a judgment on August 24, 2012, reflecting that agreement. That judgment has not been appealed.

Additionally, the parties submitted a Consent Judgment of Partition of Community Property on August 24, 2012, acknowledging the trial court's judgment of that same date and that their community property regime terminated on August 24, 2012. In my opinion, however, the specific property that the parties partitioned in connection with the 1995 partition and 2000 partition is, and has been since the date of those documents, the parties' separate property, as recognized in the 2012 judgment, which accepts those partitions. Notably, the 1995 partition only addresses community debt rather than community assets. Therefore, I believe that the community property regime terminated on August 24, 2012, as specifically stated in the trial court's August 24, 2012 judgment, rather than June 15, 1994, as determined by the trial court in its judgment rendered on November 15, 2017, and affirmed by the majority of this court on appeal.

I further believe that the majority's affirmation of the trial court's November 15, 2017 judgment creates a dangerous precedent by overturning a decades-old statute and corresponding jurisprudence regarding how spouses terminate their community property during marriage. Louisiana Civil Code Article 2329, which was enacted approximately forty years ago, provides the exclusive procedure for spouses to terminate their community property during their marriage, as follows: (1) spouses must file a joint petition to terminate their community; (2) the trial court must find that the parties understand the rules and governing principles, and; (3) the trial court must find that the termination serves their best interests. "The formalities of Article[] 2329 . . . must be construed *stricti juris*

2

because of the strong legislative policy against spouses giving up their community rights during marriage without judicial supervision." *Deshotels v. Deshotels*, 13-1406, pp. 2-3 (La.App. 3 Cir. 11/5/14), 150 So.3d 541, 543-44. Only the August 24, 2012 judgment satisfies the requirements of La.Civ.Code art. 2329 as opposed to the 1995 partition and 2000 partition. Accordingly, I would reverse the trial court's judgment.

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT
18-134


DARREL D. RYLAND

VERSUS

CONSTANCE RYLAND


**Savoie, J. dissenting with written reasons**.

I respectfully dissent from the majority's opinion to affirm. Ms. Ryland's 2016 Petition seeks to rescind the August 24, 2012 consent judgment for lesion under La.Civ.Code art. 814. However, because an action under La.Civ.Code art. 814 is available only to "an extrajudicial partition," and not a consent judgment, Ms. Ryland's 2016 Petition fails to state a cause of action under La.Civ.Code art. 814. *See Wurtzel v. Wurtzel*, 03-902 (La.App. 5 Cir. 12/30/03), 864 So.2d 727, *writ denied*, 04-280 (La. 3/26/04), 871 So.2d 353. An appellate court may notice on its own motion a plaintiff's failure to state a cause of action. La.Code Civ.P. art. 927(B). Therefore, I would dismiss Ms. Ryland's 2016 Petition for no cause of action.

In addition, while Ms. Ryland's Petition does not specifically seek to nullify the August 2012 judgment under La.Code Civ.P. art. 2004, even if the Petition is construed as asserting such a claim, it would be barred by peremption. The 2016 Petition is based upon Ms. Ryland's allegation that Mr. Ryland withheld from her his intentions of filing a divorce during their discussions leading to the 2012 consent judgment; however, Ms. Ryland acknowledges that Mr. Ryland filed for divorce in 2013. Therefore, any nullity action under La.Code Civ.P. art. 2004 asserted in the 2016 Petition is barred by the applicable one-year peremption period. *See In re*

*Succession of Bernat*, 13-277 (La.App. 3 Cir. 10/9/13), 123 So.3d 1277, *writ denied*, 13-2640 (La. 2/7/14), 131 So.3d 865, and *Knox v. W. Baton Rouge Credit, Inc.*, 08-1818, (La.App. 1 Cir. 3/27/09), 9 So.3d 1020.  Peremption may be noticed by the appellate court on its own motion.  La.Code Civ.P. art. 927(B).  Therefore, I would dismiss Ms. Ryland's 2016 Petition for this reason as well.